UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PROVERIS SCIENTIFIC CORPORATION,

      Plaintiff,

v.

INNOVASYSTEMS, INC.,

      Defendant.

Civil Action No. 05-12424-WGY

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF CHARLES NORMAN QUINN

### PRELIMINARY STATEMENT

Plaintiff Proveris Scientific Corporation ("Proveris") moves, pursuant to FED. R. EVID. 104(a)[1], 701, 702, FED. R. CIV. P. 37(c)(1), 26(a)(2)(B), and Local Rule 7.1, for a finding that Charles Norman Quinn ("Quinn"), the designated "expert" witness of Defendant InnovaSystems, Inc. ("Innova"), is not qualified to testify as an expert in this matter and thus the Court should exclude Quinn's testimony and report from evidence.[2]  The Court should find Quinn unqualified to testify in this case and exclude Quinn's testimony and report for two reasons.  First, Quinn, who has worked as an attorney since 1973, and was last employed as an engineer in 1970, is not qualified to render expert opinions regarding the technology at issue in this case.  Although he

---

[1]     FED. R. EVID. 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the court."  FED. R. EVID. 104(a).

[2]     Proveris has moved to preclude Quinn from testifying as soon as practicable given the circumstances of this case.  As the Court may recall, Innova served Proveris with Quinn's expert report well after the deadline.  Though the Court ruled on February 13, 2007, that Innova's untimely service would be allowed, the Court also ruled that Innova must make Quinn available for a deposition in advance of the trial.  That deposition occurred just several weeks ago, on February 22, 2007.  During the final pretrial conference on February 20, 2007, in response to an inquiry by Proveris regarding the possibility of filing motions *in limine* to exclude expert testimony, the Court commented that it would entertain such motions up to the trial start date and provided the parties with the bases on which it excludes experts.  Proveris thus files its motion to exclude the testimony and report of Quinn in accordance with the standards established by the Court.

has an engineering background, Quinn has no experience in and is not qualified to give expert testimony regarding the science underlying the disputed patent in this case: nonimpaction spray pattern and plume geometry analysis of, for example, metered dose inhaler and nasal spray drug delivered products. Second, the Court should find Quinn unqualified to testify and exclude Quinn's legal opinions because his opinions are conclusory, legally inaccurate, and do not aid this Court or the fact finder in evaluating this case. Quinn is neither qualified to render an expert opinion in this case, nor does his proposed testimony meet the reliability and admissibility requirements of Federal Rules of Evidence 701 and 702. Accordingly, the Court should find Quinn unqualified to testify in this matter and exclude Quinn's testimony and "expert" report.

## BACKGROUND

On August 31, 2004, the United States Patent and Trademark Office issued to Proveris U.S. Patent No. 6,785,400 (the "'400 patent"), entitled SPRAY DATA ACQUISITION SYSTEM. Proveris has brought suit against Innova for infringement of the '400 patent. The '400 patent discloses and claims novel systems and devices for nonimpaction spray pattern and plume geometry analysis of, for example, metered dose inhaler and nasal spray drug delivered products. The '400 patent technology is embodied in Proveris' SprayVIEW® spray characterization and measurement system, which has been used, *inter alia*, by pharmaceutical organizations and the U.S. Food and Drug Administration to perform spray pattern and plume geometry tests on spray delivered drug therapies. A knowledge of and experience with systems and devices for nonimpaction spray pattern and plume geometry analysis is thus a relevant and important qualification for potential experts in this case. Proveris' expert, Ernest F. Hasselbrink, Jr., has directly relevant qualifications, with a background in laser-based optical flow diagnostics and particle image velocimetry.

Pursuant to Federal Rule of Civil Procedure 26, Innova has identified Quinn as its expert witness. Quinn submitted an "expert" letter or report dated October 31, 2006. (A true and accurate copy of Quinn's report is attached to the Declaration of Annapoorni R. Sankaran ("Sankaran Declaration") as Exhibit A). This Court allowed Innova to designate Quinn over four months past the deadline, by order dated February 13, 2007. Proveris explored the basis for Quinn's conclusions during his deposition on February 22, 2007. During his deposition, Quinn admitted that, unlike Proveris' expert, he is not qualified and does not have experience in the specific subject area of the technology of the patent at issue in this case, and he admitted that his opinions in this case are primarily of a legal and not technical nature.

## FACTS

**A.    Quinn, a Lawyer, Is Not Qualified To Offer Expert Opinions Regarding The Particular Technology At Issue In This Case.**

Quinn testified during his deposition regarding his inexperience as an engineer in measuring or photographing spray plumes:

> **Q.    Well, we looked you up on your website for the law firm. Your picture does not do you justice. You graduated from Purdue University in 1965 with a bachelor of science in mechanical engineering, correct?**
> **A.    Correct.**
> **Q.    And then you graduated from Penn State University in 1970 with a masters degree in is it engineering science?**
> **A.    Yes.**
> **Q.    Did you do a thesis for your masters degree?**
> **A.    Yes.**
> **Q.    What was the subject matter of your thesis?**
> **A.    The subject matter of my thesis was the effects and control of temperatures in orbiting earth satellites.**
> **Q.    Your masters thesis did not involve measuring or photographing plumes from nozzles, did it?**
> **A.    The masters thesis?**
> **Q.    Correct.**
> **A.    It did not.**
> **Q.    From 1973 on, were you employed as an attorney?**
> **A.    Yes.**
> **Q.    Were you ever employed as an engineer?**

A.    Yes.
**Q.    Where were you employed first as an engineer?**
A.    I was employed by the General Electric company as an engineer in Valley Forge, Pennsylvania commencing in January of 1965.
**Q.    When did the employment with GE end?**
A.    The week before I started law school.
**Q.    That would have been 1970?**
A.    That's correct.
**Q.    When you were employed at GE - - strike that.**
**When you were at GE, were you employed as an engineer?**
A.    Yes.
**Q.    What did you work on at GE?**
A.    I worked on the first program of the United States Air Force and intelligence agencies collectively to develop a multiple orbit, meaning more than one time around the earth, satellite for reconnaissance purposes.

(Quinn Dep. at 8, line 9 - Quinn Dep. at 10, line 11)[3] (relevant portions of the Quinn Deposition are attached to the Sankaran Declaration as Exhibit B).

**B.    Quinn's Opinions Are Merely Unsupported Legal Conclusions.**

Quinn also admitted during his deposition that his "expert" report is primarily nothing more than a legal opinion:

**Q.    How would you characterize your opinion -- well, strike that -- your October 31, 2006 letter?  Would you characterize that as a legal opinion or a technical opinion or both?**
**A.**    There are aspects of it being a technical opinion, but it's principally a legal opinion.  There are aspects of it that are certainly technical that I drew on my technical background to deliver.
**Q.    But you would consider this to be more of a legal opinion than a technical opinion?**
**A.**    Yes.

(Quinn Dep. at 87, line 22 - Quinn Dep. at 88, line 8).  Quinn's own admissions prove he is not qualified to render the opinion at issue and accordingly this Court should preclude Innova from offering Quinn's testimony at trial.

---

[3]    Quinn gamely tried to argue that his work on spy satellites gave him experience measuring spray plumes. He ultimately had to admit, however, that this experience, which was at least 37 years ago, concerned gas jets to stabilize the satellite once in orbit, and he had no recollection of how, if at all, the plumes from the jets were measured.  (Quinn Dep. at 10, line 24; Quinn Dep. at 11, line 21).

**ARGUMENT**

**I.     THE COURT MUST SERVE AS GATEKEEPER AND ONLY ALLOW EXPERT TESTIMONY FROM QUALIFIED WITNESSES.**

Federal Rule of Evidence 702 provides specific and narrow guidelines for admission of expert testimony: "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; see also Huber v. JLG Industries, Inc., 344 F. Supp.2d 769, 773 (D. Mass. 2003) (listing elements). The United States Supreme Court has provided guidance for the proper admission of expert testimony in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Daubert, the Supreme Court left it to the trial judge to determine as an initial matter whether a proffered witness is qualified to give the expert opinion he seeks to express. 509 U.S. at 589 (noting factors to be considered by court in evaluating expert). Kumho Tire established that the expert qualification rule announced in Daubert applies to the testimony "of engineers and other experts who are not scientists." 526 U.S. at 141.

In conducting its expert inquiry, the Court first must determine whether the proposed expert is "qualified by knowledge, skill, experience, training, or education." Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co. Inc., 124 F.3d 252, 259 (1st Cir. 1997) (quotations omitted). Second, the Court must inquire "whether the proffered testimony concerns scientific, technical, or other specialized knowledge," and the Court must act as "gatekeeper" to assess whether the proposed expert testimony, including the methodology used, "rests on a reliable foundation [,]. . . is relevant to the facts of the case" and will assist the trier of fact. Id. (quotations and citations

omitted) (emphasis removed).  The Court must exclude from evidence the testimony of

unqualified and unreliable "experts."  See, e.g., Rohm & Haas Co. v. Brotech Corp., 127 F.3d

1089, 1092 (Fed. Cir. 1997) (upholding district court's refusal to give weight to expert's

opinions where there was no corroborating evidence to support expert's theories); Acoustical

Design, Inc. v. Control Electronics Co., Inc., 932 F.2d 939, 942 (Fed. Cir. 1991) (affirming

exclusion of patent expert's testimony regarding how claims are to be drafted to avoid prior art

and that the claims in suit read on the prior art because testimony would not have been of benefit

to jury); In re Independent Service Organizations Antitrust Litigation, 114 F. Supp. 2d 1070,

1105 (D. Kan. 2000) (finding that patentee's expert's opinions in affidavit regarding

infringement under doctrine of equivalents were inadmissible because expert, although a doctor

in the field of polymer rubber chemistry, was not shown to be an expert qualified in the field

relating to the patent of copier fuser heat rolls).  Because Quinn fails to meet the standards for

admission of expert testimony, this Court should exclude his testimony.

**II.    THE COURT SHOULD EXCLUDE QUINN'S "EXPERT" REPORT AND TESTIMONY BECAUSE HE IS NOT QUALIFIED TO GIVE TECHNICAL EXPERT OPINIONS REGARDING THE PARTICULAR TECHNOLOGY AT ISSUE IN THIS CASE.**

Before the Court may classify Quinn as an "expert," the Court must first find that he is

"qualified . . . by knowledge, skill, experience, training, or education" in the subject area about

which he plans to testify.  FED. R. EVID. 702; see also FED. R. CIV. P. 26(a)(2)(B) (noting expert

report must contain "complete statement of . . . qualifications of the witness"); Prado Alvarez v.

R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005) (citing Ed Peters Jewelry, 124

F.3d at 259 (internal citations omitted)).  This Court has broad discretion in its determinations

regarding expert qualifications.  See Poulin v. Greer, 18 F.3d 979, 984 (1st Cir. 1994).  If the

Court finds Quinn is not qualified as an expert witness, Quinn may not give testimony "based on

6

scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

Merely being educated in a field generally is not sufficient to qualify an expert to testify in every case remotely touching upon that field. Rather, the First Circuit, and other courts have held that while a person may be qualified as an expert in a related field, if the person is not qualified in the subject matter of the particular case being litigated, the Court should not allow the person to testify as an expert in the case. As this Court has observed, to be sufficiently qualified as an expert a witness must have knowledge, skill, training or education "in the *specific* subject for which his testimony is offered." <u>Whiting v. Boston Edison Co.</u>, 891 F. Supp. 12, 24 (D. Mass. 1995) (emphasis in original). "Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease." <u>Id.</u>

For example, in <u>Tokio Marine & Fire Insurance Co., Ltd. v. Grove Manufacturing Co.</u>, 958 F.2d 1169 (1st Cir. 1992), the First Circuit held that a civil engineer was not qualified to render expert opinions on cranes and on crane accident investigations and safety. <u>Id</u>. at 1173-74. The court concluded that the proffered expert lacked relevant education and training because he had a civil, not a mechanical, engineering degree and did not possess relevant industry experience such as operating, designing, or performing maintenance on cranes. <u>Id</u>. at 1174. Additionally, the proffered expert had not written any publications or conducted an in-depth study on the subject of cranes. <u>Id.</u>

Similarly, in <u>Bogosian v. Mercedes-Benz of North America, Inc.</u>, 104 F.3d 473 (1st Cir. 1997), the First Circuit held that a master mechanic was unqualified to render expert opinions about an alleged transmission design defect in an automobile.  <u>Id</u>. at 477.  The court explained that, although the proffered expert was well qualified to testify as a master mechanic, he did not possess an engineering degree, his formal education in engineering was insufficient (limited to three semesters of basic engineering), and he had never professionally designed a transmission component in an automobile.  <u>Id.</u>  The proffered expert had also only testified on one prior occasion with respect to the alleged design defect.  <u>Id.</u>  <u>See also</u> <u>Hochen v. Bobst Group, Inc.</u> 290 F.3d 446, 452 (1st Cir. 2002) (holding expert in electronic controls unqualified to render opinion as to cause of explosion); <u>Polaino v. Bayer Corp.</u>, 122 F. Supp.2d 63, 68-69 (D. Mass 2000) (finding chemist not qualified to render opinion with respect to alleged discharge of fumes by mixing machine where he had no education in field of mechanical engineering, had never designed a mechanical device with moving parts, and had never inspected working model of mixer); <u>Jesionowsky v. Beck</u>, 955 F. Supp. 149, 150 (D. Mass. 1997) (holding polygraph examiner who was qualified to testify as an expert about the reliability of polygraph examinations in general was unqualified to testify as an expert about the scientific theory underlying polygraph tests); <u>Smith v. Ford Motor Co.</u>, 882 F. Supp. 770, 772 (N.D. Ind. 1995) (finding former automotive collision industry worker was unqualified to render expert opinions about the design of the fuel and electrical systems of an automobile).

Quinn's education, training and experience show that he has no background in nonimpaction spray pattern and plume geometry analysis.  Quinn testified that he received a bachelor's degree in mechanical engineering in 1965 and a masters degree in engineering science in 1970.  (Quinn Dep. at  8, lines 9-18).  Quinn worked as an engineer at GE until 1970 on a

program for the United States Air Force and intelligence agencies to develop a multiple orbit satellite for reconnaissance purposes. (Quinn Dep. at 9, line 16- Quinn Dep. at 10, line 11). Quinn admitted, however, that for the past 30 plus years, he has worked, not as an engineer, but as a patent attorney. (Quinn Dep. at 9, lines 11-13).

While Quinn may hold a degree in mechanical engineering and has some practical work experience as an engineer, these facts do not automatically qualify him to give expert testimony concerning the very specific technology at issue in this case: nonimpaction spray pattern and plume geometry analysis. Unlike Proveris' expert, who has a directly relevant background in laser-based optical flow diagnostics and particle image velocimetry, Quinn's general engineering background simply does not qualify him to opine on the technical subject matter of this case.

By his own admission, Quinn considers his October 31, 2006 "expert" opinion letter to be more of a legal opinion than a technical opinion. (Quinn, Dep. at 88, lines 6-8) Although Quinn graduated from Penn State University in 1970 with a masters degree in engineering science, his masters thesis did not involve measuring or photographing plumes from nozzles. (Quinn Dep. at 8, line 15 - Quinn. Dep. at 9, line 7). Based upon Quinn's admitted lack of training, education or experience in the field of nonimpaction spray pattern and plume geometry analysis, he is unqualified to render technical expert testimony in this case.[4] This Court should not allow Innova, which has failed to identify an expert with technical expertise in the technology underlying the '400 patent, to slip in at trial technical expert testimony through Quinn, a patent attorney with a general mechanical engineering background. See Universal Athletic Sales Co. v.

---

[4]     Even if Quinn had testified as an expert in other cases–information not provided in Quinn's report as mandated in Rule 26–the First Circuit has long recognized that this does not qualify him to testify as an expert regarding the particular technology applicable to the patent at issue in the instant case. See Apostol v. United States, 838 F.2d 595, 599 n.4 (1st Cir. 1988) ("Apostol attempts to overcome his lack of proof on McDermott's qualifications by pointing to cases where McDermott had previously testified as an expert . . . Apostol has provided no legal support for the remarkable proposition that a court is bound to qualify as an expert someone who testified as an expert in other cases.").

American Gym, Recreational & Athletic Equipment Corp., 546 F.2d 530, 537-39 (3d Cir. 1976),

cert. denied 430 U.S. 984 (1977) (reversing district court for "according great weight" to

opinions of patent attorney who did not have qualification in relevant art and was attorney at law

firm of attorney representing defendant).

**III.     THE COURT SHOULD EXCLUDE QUINN'S "EXPERT" REPORT AND TESTIMONY BECAUSE HIS LEGAL OPINIONS ARE CONCLUSORY, INACCURATE, AND DO NOT AID THIS COURT OR THE FINDER OF FACT.**

Although Quinn considers his October 31, 2006 "expert" opinion letter to be more of a

legal opinion than a technical opinion (Quinn Dep. at 88, lines 6-8), the Court also should

exclude Quinn's legal opinions in this case because his opinions are conclusory, inaccurate, and

do not aid this Court or the finder of fact.  See FED. R. EVID. 702 (requiring expert testimony to

be "based upon sufficient facts or data"); FED. R. EVID. 701 (allowing opinion testimony from

lay witness only where opinion is, *inter alia*, "rationally based on the perception of the witness"

and "helpful to a clear understanding of the witness' testimony or the determination of a fact in

issue").  The scope of a legal expert's testimony in a patent case is narrow and limited, and

courts often reject the testimony of legal experts as being both unnecessary and unhelpful.  See,

e.g., Markman v. Westview Instruments, Inc., 52 F.3d 967, 983 (Fed. Cir. 1995) (observing "the

testimony of Markman and his patent attorney on the proper construction of the claims is entitled

to no deference"); Biomedical Polymers, Inc. v. Evergreen Industries, Inc., 976 F. Supp. 98, 100

(D. Mass. 1997) ("Biomed argues that Mr. Manbeck's testimony should be stricken because it

invades the province of the Court by couching legal arguments as expert testimony . . . With

respect to opinions of legal experts, the Federal Circuit has stated that '[T]he court has complete

discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it

entirely, or even to exclude it' . . . This Court concludes that Mr. Manbeck's affidavit on the law

is unnecessary and inappropriate and will, therefore, be stricken.") (citing Markman, 52 F.3d

967); W.R. Grace & Co. v. Viskase Corp., 1991 WL 211647, at *1-2 (N.D. Ill. Oct. 15, 1991)

("Viskase moves to exclude Banner's testimony on the ground that there is no need for a patent

lawyer to explain patent law to the court.  Viskase is correct. Federal judges are expected to be

experts on federal law . . . Accordingly, the testimony of a legal expert in federal cases is

generally unnecessary . . . Both parties are represented by numerous patent lawyers.  Banner's

proffered testimony offers no meaningful assistance to the court as the trier of fact . . . Thus,

Viskase's motion to exclude Banner's testimony is granted.") (internal citations omitted).

      The Court should be especially hesitant to admit expert legal testimony where a witness

attempts to contradict the written record of a patent.  See, e.g., Phillips v. AWH Corp., 415 F.3d

1303, 1318 (Fed. Cir. 2005) ("a court should discount any expert testimony that is clearly at odds

with the claim construction mandated by the claims themselves, the written description, and the

prosecution history, in other words, with the written record of the patent" ) (quotations and

citation omitted); Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir.

1995) (holding expert testimony should be given no weight where testimony is inconsistent with

patent specification and file history).

      Finally, purported "expert" opinions that are simply unsupported conclusions are entitled

to no weight.  See Lotus Dev. Corp. v. Borland, Int'l Inc., 831 F. Supp. 202, 215 (D. Mass. 1993)

(affording little weight to proposed expert's "unexplained and unsupported" conclusion where

"nothing purports to explain how the expert reached this conclusion"),  reversed on other

grounds, 49 F.3d 807 (1st Cir. 1995).

      Quinn's experience as a patent attorney does not automatically qualify him to testify as

an expert in every patent case.  Here, much of the "expert" testimony Quinn proposes is really

his non-scientific opinions based upon his review of and disagreement with the file wrapper of

the proceedings in the United States Patent and Trademark Office regarding the '400 patent, and

his general observations as a patent attorney. (See Sankaran Declaration, Exhibit A, at 1-6). He

provides the Court a primer on patent claim construction and interpretation. (See Sankaran

Declaration, Exhibit A, at 6-7). He then provides a summary of Innova's device (despite his lack

of involvement in the creation of the device or expertise in the specific technology underlying

the device), and he goes on to list prior art that he does not believe the patent examiner

sufficiently considered during the review process for the '400 patent (even though the patent

examination record clearly shows that the patent examiner had the materials or comparable

materials before him during his review of the '400 patent application, and Quinn apparently

ignores the legal presumption that a patent examiner considers the materials before him). (See

Sankaran Declaration, Exhibit A, at 7-8). These are each issues about which the Court is capable

of drawing its own conclusions, without the need for Quinn's "expert" testimony. See Capri

Jewelry Inc. v. Hattie Carnegie Jewelry Enterprises, Ltd., 539 F.2d 846, 849 (2d Cir. 1976)

(finding no need for "legal" expert testimony where judge was just as capable of understanding

issues as the offered patent attorney expert and noting trial court's observation that he would

welcome expert help "about the technology" but did not require the assistance of an expert in

"how to interpret a file wrapper, the legal effect of amending a claim and so forth" since "that is

something that counsel can do in their briefs and oral argument just as effectively as a patent

expert") (quotations omitted).

Quinn's opinion regarding whether the Innova device infringes claims 1 and 2 of the '400

patent should be rejected by this Court, because the opinion is completely conclusory and is

contained solely in a one-sentence footnote at the very beginning of Quinn's report, and in

12

another footnote at the very end of his report.  (See Sankaran Declaration, Exhibit A, at 1 n.1; at 14 n.4); see also Lotus, 831 F. Supp. at 215.

Similarly, Quinn's validity conclusions in this case must be rejected because, as explained above, Quinn lacks the relevant skill in the art and training and experience in the technology at issue in this case for his opinions to be given any weight by this Court.  (Quinn Dep. at 8-11, 87-88).  Nothing in Quinn's background qualifies him to testify about plumes of spray, or lasers, two of the central technical components of this case.  For example, nothing in Quinn's background qualifies him to opine about the significance of "[a] simple solenoid value controlled by a timer or even a pushbutton, opening and closing to regulate flow of liquid to an atomizer." (See Sankaran Declaration, Exhibit A, at 9).  Nor is Quinn qualified to opine about whether certain prior art references "disclose apparatus for producing image data which is representative of at least one sequential set of images of a spray plume, with each of the images being representative of a density characteristic of the spray plume along a geometric plane that intersects the spray plume at a predetermined instant in time." (See Sankaran Declaration, Exhibit A, at 10).  Similarly, Quinn is not qualified to opine regarding what type of and strength of laser "one of ordinary skill in the art would choose" to "record the image produced by the laser light reflected by the spray plume of interest." (See Sankaran Declaration, Exhibit A, at 13).

While Quinn possesses professional expertise and training that may be useful and admissible in some patent cases, this case is not one of them.  Quinn's training and background do not qualify him to testify regarding the technical issues in this case, and the Court must also reject Quinn's legal conclusions, which arise from his unqualified technical opinions.

## CONCLUSION

WHEREFORE, Proveris respectfully requests the Court to find Charles Norman Quinn is not qualified as an expert witness in this case and to preclude him from testifying at trial.

Respectfully submitted,

PROVERIS SCIENTIFIC CORPORATION,

By its attorneys,

/s/ Annapoorni R. Sankaran
Annapoorni R. Sankaran (BBO #631065)
Edward E. Hale, Jr. (BBO #651272)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA  02110
(617) 310-6000 (tel)
(617) 310-6001 (fax)

Gerard F. Diebner (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY  10166
(212) 801-9200 (tel)
(212) 801-6400 (fax)

DATED: March 19, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants as of March 19, 2007.

/s/ Annapoorni R. Sankaran