UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVERIS SCIENTIFIC CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>INNOVASYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 05-12424-WGY |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF PROVERIS SCIENTIFIC CORPORATION FOR AWARD OF A REASONABLE ROYALTY, INTEREST, AND COSTS

Pursuant to 35 U.S.C. § 284, plaintiff Proveris Scientific Corporation ("Proveris") moves the Court to award it reasonable royalty damages for defendant InnovaSystems, Inc.'s ("Innova") admitted infringement of claims 3-10 and 13 of United States Patent No. 6,785,400 (the "'400 patent"), together with interest and costs. As explained in more detail below, Proveris is statutorily entitled to no less than a reasonable royalty for Innova's infringement of the '400 patent, an amount which this Court is charged with determining, interest on that amount, and costs. Proveris respectfully submits that the reasonably royalty the Court should award to Proveris is $180,000.00 given the evidence introduced at trial regarding Proveris' lost profits and the market in which Proveris sells its SprayVIEW® system, which incorporates the '400 patent technology.

Proveris also submits that the interest rate the Court should employ to calculate the interest on the reasonable royalty to be awarded is the Massachusetts prejudgment rate of twelve percent (12%), since, as explained below, using the federal post-judgment rate would be unfair. Further, Proveris submits that 35 U.S.C. § 284 and FED. R. CIV. P. 54(d)(1) confirm Innova's

liability to pay Proveris' costs, an amount that should be determined in accordance with the procedure set forth in FED. R. CIV. P. 54(d)(1) after entry of the final judgment.

## ARGUMENT

### I. THE COURT SHOULD AWARD PROVERIS A REASONABLE ROYALTY OF $180,000.00, TOGETHER WITH INTEREST AND COSTS.

Proveris is entitled to damages for Innova's infringement of no less than a reasonable royalty. 35 U.S.C. § 284. Section 284 of Title 35 provides as follows:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonably royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
>
> When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. . . .
>
> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

35 U.S.C. § 284 (2007). "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." Dow Chem. Co. v. Mee Indus., 341 F.3d 1370, 1381 (Fed. Cir. 2003); see also Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 895 F.2d 1402, 1406 (Fed. Cir. 1990) ("[i]n patent law, the fact of infringement establishes the fact of damages because the patentee's right to exclude has been violated"). Moreover, "expert testimony is not necessary to the award of damages, but rather 'may be received . . . as an aid.'"[1] Dow Chem., 341 F.3d at 1382 (quoting 35 U.S.C. 284 (2000)).

---

[1] The Court believed that evidence of a reasonable royalty had to be introduced by an expert, rather than by Mr. Farina, Proveris' president. Consequently, the Court limited Proveris' ability to adduce testimony related to a reasonable royalty through Mr. Farina, who has first-hand knowledge of the industry in which Proveris sells the '400 patent technology and in which Innova sold its infringing OSA system. (Declaration of Annapoorni R. Sankaran ("Sankaran Decl."), Vol. I, filed on April 24, 2007, attaching as Exhibit ("Ex.") A excerpts from Trial Transcript ("Tr.") at 321-322.) Proveris references herein exhibits attached to Volume I of the Declaration of Annapoorni Sankaran by exhibit letter. Proveris references herein exhibits attached to Volume II of the Declaration of Annapoorni Sankaran by exhibit number, and these exhibit numbers correspond to the trial exhibit numbers. Only

"The determination of a reasonable royalty [] is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date the infringement started." State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1580 (Fed. Cir. 1989). "When a 'reasonably royalty' is the measure, the amount may be considered a factual inference from the evidence, yet there is room for exercise of a common-sense estimation of what the evidence shows would be a 'reasonable' award." Lindemann, 895 F.2d at 1406. The Court may also consider the factors listed in Georgia-Pacific Corporation v. United States Plywood Corporation. 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors for the Court's consideration), modified and aff'd, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971).

The so-called "Georgia-Pacific factors" are: (1) the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty; (2) the rates paid by the licensee for the use of other patents comparable to the patent in suit; (c) the nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales; (7) the

---

cited trial exhibits are included in Volume II of the Declaration of Annapoorni Sankaran, and accordingly there are missing exhibit numbers in the Volume II exhibit binder.

duration of the patent and the term of the license; (8) the established profitability of the product made under the patent; its commercial success; and its current popularity; (9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention; (11) the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use; (12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer; (14) the opinion testimony of qualified experts; and (15) the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**A.   THE COURT SHOULD AWARD PROVERIS A REASONABLE ROYALTY OF $180,000.00.**

Considering the evidence introduced at trial and the inferences that may be drawn from that evidence, the Court should award Proveris a reasonable royalty in the amount of the net profits Proveris lost on the two sales Innova completed after receiving notice of its infringement

4

of the '400 patent.² (See Ex. 18; Tr. at 187, 192-194.) With regard to Georgia-Pacific factors 1, 2, 3, 4, 7, 12, and 13, Dino Farina, Proveris' president, testified that aside from Innova's infringing OSA, he knew of no other comparable systems. (Tr. at 298.) If a company could not buy a SprayVIEW® system, it has no other option other than the infringing OSA. (Tr. at 307.) Indeed, no other device competes with Proveris' SprayVIEW® system other than Innova's OSA. (Id. at 305.) Moreover, Innova did not introduce at trial any evidence that it paid for the use of other patents comparable to the '400 patent. Indeed, Innova's admitted infringement of the '400 patent underscores the non-existence of a comparable patent. (Tr. at 149, 168; Tr. at 241.) That no other comparable technology exists also underscores the value of the '400 patent technology and the fact that the damages caused by Innova's infringement are directly credited to that technology.

With regard to Georgia-Pacific factors 5, 6, and 15, Proveris and Innova are competitors in a niche market. (Tr. at 295-296, 298.) A hypothetical negotiation between Proveris and Innova would have occurred in mid to late 2004, when Innova's infringement began. (See Ex. 11.) This time period is not too far after when the FDA amended its guidance document to add the '400 patent technology as an accepted method for performing recommended spray pattern and plume geometry tests. (See Ex. 4.) It is entirely reasonable to infer that Innova recognized

---

² Pursuant to 35 U.S.C. § 287(a), Proveris' damages are limited to the damages suffered as a result of sales made by Innova after it received the infringement notice because, after the '400 patent issued, SprayVIEW® systems were still marked as "patent pending" rather than with the patent number. 35 U.S.C. § 287(a) (2006); see also Motorola, Inc. v. United States, 729 F.2d 765, 769 (Fed. Cir. 1984). Therefore, Proveris seeks a reasonable royalty on the two OSA systems Innova shipped and installed after December 2005. (Tr. at 187, 192-194.) To determine when Innova "sold" an OSA system, the Court should look to the term's "ordinary meaning in contract law, as revealed by traditional sources of authority." Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1255 (Fed. Cir. 2000) (in context of defining the term "offer to sell" under 35 U.S.C. § 271(a)). "The [Uniform Commercial Code] defines 'sale' as the 'passing of title from the seller to the buyer for a price.'" Rumsfeld v. United Techs. Corp., 315 F.3d 1361, 1371 (Fed. Cir.) (quoting U.C.C. § 2-106 (1989)), cert. denied, 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed. 2d 424 (2003). Unless explicitly defined by the parties, title passes where and when the seller completes its performance with reference to physical delivery of the goods at their destination. U.C.C. § 2-401(2)(b). Thus, because Innova sold two OSA systems after receiving the infringement notice, Proveris should receive a reasonable royalty for these two systems.

the potential of the '400 patent technology, wanted to enter the market, and would have been willing to pay a significant royalty for the right to use Proveris' '400 patent technology had Proveris been willing to license it to Innova (which Proveris would not, and will not, do). Moreover, that Innova continued to advertise the OSA system on its website, (Ex. 24), is evidence of Innova's belief that selling the infringing OSA system generates goodwill that carries over onto its sale of other products. It is reasonable to infer then, that Innova's ability to sell the infringing OSA undoubtedly generates sales of its other products and services.

With regard to Georgia-Pacific factors 8, 9, and 10, Mr. Farina testified that Proveris' average lost profit on each SprayVIEW® system sold from January 2005 through August 2006 was approximately $90,000. (Tr. at 322.) Moreover, the FDA amended its Guidance to Industry to recommend that pharmaceutical companies use the '400 patent technology. (Id. at 299-300; compare also Ex. 1 with Ex. 4.) The FDA's amendment to its guidance documents constitutes irrefutable evidence of the utility and advantages of the '400 patent technology over the prior manual test methods. Before Proveris developed the '400 patent technology, embodied in SprayVIEW®, pharmaceutical companies used an inconsistent, unreliable manual method to test spray pattern that was fraught with subjectivity. (Ex. 9.) SprayVIEW® revolutionized the pharmaceutical industry by introducing an automated method that is head and shoulders better than the old manual mode. One only has to look at the changes made by the FDA to see the obvious advantages SprayVIEW® offers over the manual method. By virtually eliminating subjectivity, inconsistency, and unreliability in spray pattern test performance and results, SprayVIEW® effectively obsolesced the manual method. (Compare Ex. 1 with Ex. 4; see also Ex. 9.) Further, Mr. Farina testified that particularly since the FDA amended its

6

recommendations to include the '400 patent technology, more and more companies are becoming interested in the SprayVIEW® system. (Tr. at 300.)

With regard to Georgia-Pacific factor 11, Innova has made use of the '400 patent technology by copying it to develop its OSA system, offering to sell the OSA system, selling three of the OSA systems, advertising the OSA system on its website, and admittedly infringing nearly all of the '400 patent's claims. (See Tr. at 149, 161-162, 168; Exs. 9 – 12; Exs. 14-17; Ex. 19; Ex. 24.) While Proveris did not introduce at trial expert testimony regarding a reasonable royalty, Georgia-Pacific factor 14, "expert testimony is not necessary to the award of damages, but rather 'may be received . . . as an aid.'" Dow Chem., 341 F.3d at 1382 (quoting 35 U.S.C. 284 (2000)). Thus, the Court may determine a reasonable royalty based on factual inferences from the evidence, exercising a common-sense estimation of what the evidence shows would be a "reasonable" award. Lindemann, 895 F.2d at 1406.

Considering the evidence Proveris introduced at trial regarding its lost profits and the factual inferences from that evidence, the Court should determine that a reasonable royalty is the average net lost profit Proveris realized for the SprayVIEW® systems it sold from January 2005 through August 2006, which was approximately $90,000 for each system.[3] (Tr. at 322.) Based on the two OSA systems Innova shipped and installed after it received the infringement notice, Proveris respectfully submits that the Court should award it a reasonable royalty for Innova's infringement of the '400 patent in the amount of no less than $180,000.

**B.  THE COURT SHOULD AWARD PROVERIS COSTS AND INTEREST.**

There is no question but that a plaintiff prevailing on a claim under federal law is entitled to prejudgment interest. "[C]ases since 1933 have consistently acknowledged that a monetary

---

[3] Innova's expert on damages, David Smith, testified that in a patent case, it is possible to have a reasonable royalty greater than lost profits. (Tr. at 277.)

7

award does not fully compensate for an injury unless it includes an interest component." Laurenzano v. Blue Cross and Blue Shield of Mass., Inc., 191 F. Supp.2d 223, 234 (D. Mass. 2002) (quoting Kansas v. Colorado, 533 U.S. 1, 10 (2001)). In the First Circuit, it is well established that where a federal statute creating a claim is silent on the issue of prejudgment interest, the District Court is vested with discretion to set the rate by looking to state law. See Colon Velez v. Puerto Rico Marine Management, Inc., 957 F.2d 933, 941 (1st Cir. 1992) (affirming District Court's discretionary decision looking to state law to set rate of prejudgment interest on federal ERISA claim). In the District of Massachusetts, several federal judges have looked to Massachusetts law granting 12% prejudgment interest to set the rate applicable to a federal claim. See e.g., Radford Trust v. First UNUM Life Ins. Co. of America, 321 F. Supp.2d 226 (D. Mass. 2004) (Young, J.) (applying the Massachusetts 12% rate on an ERISA claim, noting that on the facts of the case, the application of the Massachusetts rate better served ERISA's goals of making claimants whole and preventing unjust enrichment); In U.S. ex rel. Metric Electric, Inc. v. Enviroserve, Inc., 301 F. Supp.2d 56, 75-76 (D. Mass. 2003) (Circuit Judge Dyk, sitting by designation) (applying Massachusetts 12% rate as a matter of discretion to a federal Miller Act claim); Gallagher v. Park West Bank & Trust Co., 951 F. Supp. 10, 14 (D. Mass. 1997); (Ponsor, J.) (applying 12% Massachusetts rate to a federal ERISA claim, ruling that "it would be inequitable for a breach of obligation to pay funds under a pension contract in Massachusetts to generate less interest than a breach of a simple contract").[4] Moreover in patent cases, prejudgment interest should be awarded from the date the infringement began. "Prejudgment interest has no punitive, but only compensatory, purposes. Interest compensates

---

[4] But see Vickers v. Principal Mutual Life Ins. Co., 993 F. Supp. 19, 21 (D. Mass. 1998) (Gorton, J.) (post-judgment rate under 28 U.S.C. §1961 applied); Celi v. Trustees of Pipefitters Local 537 Pension Plan, 975 F. Supp. 23, 29 & n. 4 (D. Mass. 1997) (same).

the patent owner for the use of its money between the date of injury and the date of judgment. Bio-Rad Lab., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969, 1 U.S.P.Q.2D (BNA) 1191, 1195 (Fed. Cir. 1986), cert. denied, 482 U.S. 915, 96 L. Ed. 2d 675, 107 S. Ct. 3187 (1987)." Oiness v. Walgreen Co., 88 F.3d 1025, 1033 (Fed. Cir. 1996).

Post-judgment interest should be awarded on the reasonable royalty amount as well as the prejudgment interested. The U.S. Supreme Court has construed the purpose of 28 U.S.C. section 1961 as follows: "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." Kaiser Aluminum and Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990) (citation omitted). The Fourth Circuit has ruled that awarding post-judgment interest on the sum of the damage award and the prejudgment interest "most closely comports with the purpose of the post-judgment interest statute articulated by the Supreme Court." Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1031 (4th Cir. 1993). The other Circuits appear to be in agreement that post-judgment interest must run on the judgment amount and the prejudgment interest. See Hellenic Lines Ltd. v. Gulf Oil Corp., 359 F.2d 403, 404 (2d Cir. 1966) (awarding interest on judgment amount plus interest accrued prior to judgment date was appropriate); Skretvedt v. E.I. DuPont de Nemours, 372 F.2d 193, 217 (3d Cir. 2004) (post-judgment interest should be calculated on the underlying judgment and the prejudgment interest); Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1280 (5th Cir. 1991) ("We direct the District Court to award post-judgment interest on the entire amount of the final judgment, including damages, pre-judgment interest, and attorney's fees."); Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 586 (6th Cir. 2002) (plaintiff is entitled to post-judgment interest on the district court's award of prejudgment interest); Arthur Young & Co. Reves, 937

F.2d 1310, 1338 (8th Cir. 1991) (post-judgment interest awarded on both damages and prejudgment interest) (later history omitted); Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290-291 (9th Cir. 1994) (28 U.S.C. section 1961 post-judgment interest must also run on the prejudgment interest component of the award because the policy motivating the award of post-judgment interest is best served by such a rule and authority of other Circuits supports such a rule); Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc., 103 F.3d 80, 82 (10th Cir. 1996) (failure to award post-judgment interest on prejudgment interest would wrongly decrease the present value of the monetary judgment).

Furthermore, it is also within this Court's discretion to award costs to a prevailing party, and a party need not prevail on every claim to recover costs. See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1347-1348 (Fed. Cir. 2006) ("The fact that a party does not prevail on all of its claims does not, however, preclude it from being the prevailing party for purposes of awarding costs under Rule 54(d)."); Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1183 (Fed. Cir. 1996) (holding party prevailed for purposes of Rule 54(d) when it successfully challenged validity of opponent's patent, even though party lost on its antitrust and unfair competition claims"); see also FED. R. CIV. P. 54(d)(1).[5]

Pursuant to the terms of 35 U.S.C. § 284, Proveris is entitled to prejudgment interest on any reasonable royalty or other damages this Court awards, post judgment interest on the damage award and the prejudgment interest award, and costs. Innova admitted to this Court that it infringed Claims 3-10 and 13 of the '400 patent. (Tr. at 149, 168; Tr. at 241.) Pursuant to 35 U.S.C. § 284, Proveris is entitled to a reasonable royalty to compensate it for this infringement as

---

[5] In light of Innova's admitted infringement of claims 3-10 and 13 of the '400 patent, Proveris is entitled to a judgment of $180,000.00 plus prejudgment interest on that amount calculated at 12%, as a reasonable royalty for Innova's infringement of the '400 patent. See 35 U.S.C. § 284. Proveris submitted on April 24, 2007 a separate motion and memorandum to the Court regarding Proveris' entitlement to a reasonable royalty.

set forth in part I(A), supra, and accordingly is entitled to prejudgment interest thereon. Furthermore, the Massachusetts 12% rate is appropriate to make Proveris whole for Innova's outright and admitted infringement of the '400 patent. See Radford, 321 F. Supp.2d 226. Prejudgment interest should be awarded starting on September 17, 2004, the date Innova's infringement began. See Ex. 11; Oiness, 88 F.3d at 1033. In addition, post-judgment interest should be awarded on the reasonable royalty as well as the pre-judgment interest. 28 U.S.C. §1961; Quesinberry, 987 F.2d at 1031; Hellenic Lines, 359 F.2d at 404; Skretvedt, 372 F.2d at 217; Fuchs, 939 F.2d at 1280; Caffey, 302 F.3d at 586; Arthur Young, 937 F.2d at 1338; Air Separation, 45 F.3d at 290-291; Bancamerica, 103 F.3d at 82. Finally, Proveris has spent substantial costs fighting Innova's claims of invalidity and infringement immunity, and in showing that Innova infringes the majority of the claims of the '400 patent. Accordingly, Proveris is entitled to costs pursuant to FED. R. CIV. P. 54(d)(1) as the prevailing party. See FED. R. CIV. P. 54(d)(1).

## CONCLUSION

Based on the foregoing, Proveris respectfully requests that the Court award it a reasonable royalty in the amount of $180,000.00, prejudgment interest on that amount calculated at 12%, post judgment interest on the damage award and the prejudgment interest award, and costs.

**RESPECTFULLY SUBMITTED,**
PROVERIS SCIENTIFIC CORPORATION,
Plaintiff and Counterclaim Defendant
By its attorneys,

/s/ Annapoorni R. Sankaran
Louis J. Scerra, Jr., BBO #543600
Annapoorni R. Sankaran, BBO #631065
Edward E. Hale, Jr., BBO #651272
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA  02110
(617) 310-6000
(617) 310-6001 (fax)

Gerard F. Diebner
Admitted *Pro Hac Vice*
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY  10166
(212) 801-9200
(212) 801-6400 (fax)

Susan H. Farina, BBO #568068
PROVERIS SCIENTIFIC CORPORATION
142 North Road, Suite R
Sudbury, MA  01746
(978) 371-8822
(978) 371-8942 (fax)

Date: April 24, 2007

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as of April 24, 2007.

/s/ Annapoorni R. Sankaran