UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVERIS SCIENTIFIC CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INNOVASYSTEMS, INC., )<br>)<br>Defendant. )<br>) | Civil Action No.: 05-12424 WGY |

**INNOVASYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS
CONSTRUCTION OF CLAIM 3 OF '400 PATENT**

Pursuant to the Court's instructions, Innova[1] hereby submits this Memorandum in Support of its Construction of claim 3 of the '400 Patent.

**I.  Introduction**

After trial, but no factual determination as to the meaning or scope of claim 3 or dependent claims 4-13 of the '400 Patent, the jury returned a verdict of infringement of claims 3-10 and13, as directed by this Court as a matter of law.  Accordingly, there is no substantive record for this Court to rely upon regarding the meaning or scope of claim 3 or dependent claims 4-13.  Nevertheless, the jury in its reasonable judgment awarded no damages based on the judgment as a matter of law.  Subsequently, "this Court entered a narrowly drawn permanent injunction."  As explained in Innova's Response to Proveris' Motion for a Finding of Contempt, Innova redesigned OSA in order to avoid running afoul of independent claim 3 (and the claims depending therefrom) of the '400 Patent. This non-infringing redesigned product is ADSA.

---

[1]  Unless otherwise noted, terms defined herein shall have the meanings set forth in Innova's Response to Proveris' Motion for a Finding of Contempt.

Although Proveris' Motion for Contempt was denied, the Court has nonetheless ordered the parties to prepare claim construction briefing regarding the at-issue claims of the '400 Patent.[2]  As this Court knows, an accused product that does not infringe an independent claim cannot infringe any other claims depending from that independent claim.  *See*, *e.g.*, *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).  The sole issue before the Court, therefore, is the construction of independent claim 3.[3]

Independent claim 3 of the '400 Patent recites that the claimed device must, among other things, produce "a sequential set of images" where "each of the images [is] representative of a density characteristic …. at a predetermined instant in time."  As explained below, properly construed, the requirement that the sequential images each be obtained "at a predetermined instant in time" places ADSA well outside the reach of the '400 Patent and, in particular, independent claim 3.

## II. Claim Construction

### A.     The Law of Claim Construction

Claim construction is a matter of law exclusively for the court.  *Markman v. Westview Instruments, Inc*, 52 F.3d 967, 979 (Fed. Cir. 1995).  To ascertain the true meaning of the claims, a court should first consider the intrinsic evidence, which includes the claim language, the specification, and, if in evidence, the prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-16 (Fed. Cir. 2005); *Vitronics Corp. v.*

---

[2]  Innova notes that the Court has reversed the briefing order requiring Innova to submit its claims construction brief before the patentee, Proveris, must submit its claims construction arguments. Accordingly, Innova reserves all of its rights and remedies related to this unusual procedure, including, but not limited to, conducting discovery and filing a reply to Proveris' claims construction argument.

[3] By limiting its claim construction to independent claim 3, Innova in no way admits that ADSA meets the additional limitations set forth in dependent claims 4-13 of the '400 Patent and reserves the right to construe those further additional limitations as the Court deems necessary.

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In certain circumstances, a court may also consider extrinsic evidence, such as expert testimony.  *Perini Am., Inc. v. Paper Converting Mach. Co.*, 832 F.2d 581, 584 (Fed. Cir. 1987).

A court begins claim construction by giving the claim terms their ordinary and customary meaning as understood by one of skill in the art.  *Phillips*, 415 F.3d  1312-14 (*citing Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*., 381 F.3d 1111, 1116 (Fed. Cir. 2004)) *see also Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000); *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).[4]  If the claim language is ambiguous, the court may use the remaining intrinsic evidence (*i.e.*, the specification and prosecution history) to resolve the lack of clarity.  *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  The law is settled that the specification is always consulted in construing claims.  In particular, the *Phillips* court affirmed the necessity of always consulting the specification to determine the meaning of a claim. *Id.* at 1312-16.  The *Phillips* court emphasized that the claims must be read "in view of" and "so as to be consistent with" the specification, "of which they are a part," characterizing the specification as "usually dispositive" and the "single best guide to the meaning of a disputed term."  The court explained that the importance of the specification in claim construction derives from its statutory role of providing a "full" and "exact" description of the claimed invention.

---

[4] The Federal Circuit further explained in *Phillips*, that the  "starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art."  415 F.3d at 1303.  In that regard, "[t]he descriptions in patents are not addressed to the public
generally, to lawyers or to judges, but, as section 112 says, to those skilled in the art to
which the invention pertains or with which it is most nearly connected."  *In re Nelson*, 280 F.2d 172, 181 (CCPA 1960).

3

Post-*Phillips* Federal Circuit decisions have repeatedly read *Phillips* as emphasizing the primacy of the specification in determining the meaning of claims. *E.g., Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.,* 450 F.3d 1350, 1355 (Fed. Cir. 2006) ("[a]lthough claims need not be limited to the preferred Embodiment when the invention is more broadly described, 'neither do the claims enlarge what is patented beyond what the inventor has described as the invention'," quoting *Netword, LLC v. Centraal Corp.,* 242 F.3d 1347, 1352 (Fed. Cir. 2001); *On Demand Machine Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1337-38, 1344 (Fed. Cir. 2006) *(Phillips,* resolving conflict, stressed the dominance of the specification in understanding the scope and defining the limits of the terms used in the claims; each claim term must be construed to implement the invention described in the specification; care must be taken lest word-by-word definition, removed from the context of the invention, leads to an overall result that departs significantly from the patented invention); *In re Johnston,* 435 F.3d 1381, 1384 (Fed. Cir. 2006) (it is well established that dictionary definitions must give way to the meaning imparted by the specification).

Although a court presumes that words in a claim have their customary meaning, the patentee may use the specification to define claim terms in an unconventional manner. *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001). However, if the patentee intends to adopt a definition for a term that differentiates from its plain and ordinary meaning, the patentee must do so expressly or by implication in the patent specification. *Bell Atlantic*, 262 F.3d at 1268.

Additionally, representations made during prosecution regarding the meaning of particular claim terms can affect the construction and scope of the claims as issued. *Vitronics*, 90 F.3d at 1582-83. A patentee may relinquish "a potential claim construction

in an amendment to the claim or in an argument to overcome or distinguish a reference." *Interactive Gift*, 256 F.3d at 1331. In this regard, it is well established that the prosecution history limits the interpretation of claim terms by excluding any interpretation that was disclaimed during prosecution. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003).

When intrinsic evidence is insufficient to determine the meaning of a disputed term, the court may turn to extrinsic evidence, which may include dictionaries, technical treatises and articles, expert testimony and inventor testimony. *Dow Chem.*, 257 F.3d at 1373; *see also Vitronics*, 90 F.3d at 1584 n.6.[5] Extrinsic evidence, however, may only be used to help the court determine the meaning of ambiguous claims. *Bell Atlantic*, 262 F.3d at 1269. It may not be used to vary, contradict, expand or limit the claim language. *Id*. Among the extrinsic evidence – *e.g.,* inventor and expert testimony, treatises, and dictionaries – dictionaries are the most preferred. *Interactive Gift Express*, 256 F.3d at 1332 n.1. However, general purpose (non-scientific) dictionaries should be relied upon only if the context in which the claim term is used in the patent is unclear or if it appears that the term is not used in a technical manner. *AFG* , 239 F.3d at 1248. Nonetheless, the Federal Circuit has cautioned against giving too much weight to

---

[5] As noted in note 4, *supra.*, construction preferably begins and ends with the intrinsic evidence and that such evidence is to be considered as it would be by one skilled in the art—not, for example, by attorneys, judges or, for that matter expert witnesses. On that note, Innova wishes to make clear that the clearance/freedom to operate opinion attached as exhibit B to its Response to Proveris Scientific Corporation's Motion for a Finding of Contempt (*see* Szuhaj Declaration, *infra*) should not be considered to be or to have been submitted as extrinsic expert testimony for claim construction purposes. Rather, as both this Court and Proveris are well aware, companies regularly seek and obtain clearance/freedom to operate opinions in order to ensure they are not running afoul of the rights of third-party patent owners (and, in the event they are found to do so, to evidence that such infringement was not willful). Thus, the opinion of counsel previously submitted in Innova's response was provided to illustrate to the Court and disabuse Proveris that Innova in any way acted wantonly vis-à-vis the Court's injunction , but rather carefully and considerately "designed around" the '400 patent. Indeed, the claim construction analysis from that opinion mirrors that mandated by the Federal Circuit and advocated in this brief

dictionaries and treatises and stated that courts should keep in mind the flaws inherent in such evidence. *Phillips*, 415 F.3d at 1318-19.

**B.     Construction of the term "at a predetermined instant in time"**

    **1.     Intrinsic Evidence—the Ordinary Language of the Claim**

Independent Claim 3 of the '400 Patent recites:

An apparatus for producing image data representative of at least **one sequential set of images** of a spray plume, **each of the images being representative of a density characteristic** of the spray plume

(i)     along a geometric plane that intersects the spray plume, and

(ii)    **at a predetermined instant in time**, comprising:

an illuminator for providing an illumination of the spray plume along at least one geometric plane that intersects the spray plume; and, an imaging device for generating the image data representative of an interaction between the illumination and the spray plume along the at least one geometric plane.

(emphasis added). As can be seen, the phrase "at a predetermined instant in time" appears in the preamble of claim 3. In general, a preamble limits the invention if it recites essential structure or steps, or if it is "necessary to give life, meaning and vitality" to the claim. *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Furthermore, if the preamble helps determine the scope of the patent claim, then it is construed as part of the claimed invention. *NTP, Inc. v. Research In Motion, Ltd.*, 392 F.3d 1336, 1358 (Fed. Cir. 2004). In contrast, where a patentee defines a

structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation. *Bell Communications Research, Inc. v. Vitalink Communications, Corp.*, 55 F.3d 615 (Fed. Cir. 1995).

Here, the phrase "at a predetermined instant in time" does not merely state a purpose or intended use for the invention. Instead, it can be considered to be "necessary to give life, meaning and vitality" to the claim because "at a predetermined instant in time" defines *when* the specific image data should be captured by the imaging device.[6] Thus, the phrase "at a predetermined instant in time" serves to limit the scope of independent claim 3.[7] In other words, "at a predetermined instant in time" describes when (and thereby which) images are to be captured by the imaging device of the claimed apparatus—namely those images appearing within a specific, predetermined period of time.

### 2. Extrinsic Evidence

The '400 Patent does not define the "at a predetermined instant in time" limitation," nor was there any argument set forth by the applicant during prosecution to provide insight on its meaning. Under such circumstances, where the plain meaning of the claim language may be ambiguous, Courts have determined that it may be appropriate

---

[6] That the phrase "at a predetermined instant in time" is necessary for properly construing independent claim 3 is buttressed by the fact that the claim also specifically recites the relative position for *where* the imaging device should capture the desired images —"along a geometric plane that intersects the spray plume."

[7] Interestingly, it would appear that any other conclusion would render independent claim 3 invalid. Namely, there is no support whatsoever in the written description of the '400 Patent to remove or "read out" the "at a predetermined instant in time" limitation. In fact, only the Summary of the Invention section of the '400 Patent provides any readily apparent written support for independent claim 3 (which appears to capture, nearly verbatim, a twice-described preferred embodiment of the invention). *See* '400 Patent, Col. 2, ll. 41-52 and Col. 3, ll. 1-12. Given that there is no support to exclude the "at a predetermined instant in time" limitation from the apparatus of independent claim 3, doing so would, at a minimum, render the claim invalid under 35 U.S.C. § 112, ¶1 (enablement).

to rely on extrinsic evidence, that is, evidence external to the patent and prosecution history, such as expert and inventor testimony, dictionaries and learned treatises. *Phillips*, 415 F.3d at 1317.  Indeed, under such circumstances, a dictionary definition has the further value of being "an unbiased source 'accessible to the public in advance of litigation.'" *Id*. at 1322 (quoting *Vitronics*, 90 F.3d at 1585).

### a.     Inventor Statements

During the earlier trial, Proveris provided some insight as to what it—as the patent holder and company of the sole named inventor—considered to be the meaning of the "at a predetermined instant in time" limitation.  In Proveris' Memorandum in Support of Motion of Plaintiff Proveris Scientific Corporation for Final Judgment and Permanent Injunction, dated April 24, 2007 (attached to the Declaration of Timothy J. Szuhaj in Support of Innova's Construction of Claim 3 of the '400 Patent), Proveris exactingly compared the terms/limitations of independent claim 3 with excerpts from the User Manual for OSA to ostensibly show how the User Manual evidenced that OSA infringed independent claim 3.  *See* Memorandum in Support of Motion of Plaintiff Proveris Scientific Corporation for Final Judgment and Permanent Injunction at p.10-11.  With regard to the "at a predetermined instant in time" limitation, Proveris asserted that "Section 3.5.4 [of the OSA User Manual] addresses the OSA's ability to capture the image data at a predetermined instant in time."  In support of this unambiguous assertion, Proversis averred that the OSA User Manual stated "[y]ou may use the Start Frame and End Frame inputs to choose different start and stop points."  Thus, according to Proveris, at a minimum, the "at a predetermined instant in time" limitation means selecting Start Frame and End Frame inputs in order to determine a period of time during which images

are to be captured by the imaging device of the claimed apparatus.  Put another way, the choice of Start Frame and End Frame inputs bracket the images to be collected in a given period of time (*i.e.*, "instant of time").  However, this definition of the "at a predetermined instant in time" limitation is only partially complete since it does not address what is meant by "predetermined."

### b.     Dictionary Definitions

Fortunately, the common meaning of "predetermined" is readily ascertainable.  That is, common dictionary definitions for the term "predetermined" are available.  For example, The Merriam-Webster on-line dictionary defines "predetermined" as "1 a: FOREORDAIN , PREDESTINE b: to determine beforehand; 2: to impose a direction or tendency on beforehand."  Merriam-Webster On-line Dictionary (www.merriam-webster.com).  Similarly, a thesaurus provides numerous alternatives words or phrases "predetermined," including: prearranged, set-up, predecided, decided *or* settled in advance, predesigned, preplanned, foregone, already settled *or* decided *or* resolved, planned, premeditated and preelected.  *See* J.I. Rodale , THE SYNONYM FINDER, 924 (Warner Books (1978)).[8]  Thus, the term "predetermined" conveys the idea of something *determined* in advance or ahead of time.

### 3.     Construction of "at a predetermined instant in time"

In view of the forgoing analysis, the limitation "at a predetermined instant in time" should be construed to mean:

> "A preselected period of time during which images are to be captured by the imaging device of the claimed apparatus."

---

[8] According to the U.S. Court of Appeals for the Federal Circuit, the term "predetermined" requires that something be determined "beforehand."  *See Planet Bingo, LLC v. GameTech Int'l, Inc*., 472 F.3d. 1338, 1343 (Fed. Cir. 2006).

Thus, claim 3 should be construed to require that the claimed apparatus have the image data capture period (*i.e.*, the Start Frame and End Frame inputs) determined and inputted into the apparatus *before* any data images are acquired (*i.e.*, during calibration and setting of the measurement device).[9] For example, this process could require that the specific sequential timing (*i.e.*, the Start Frame and End Frame inputs) or the specific time period (*e.g.*, X milliseconds after the spray plume starts and for Y milliseconds thereafter), be selected before the measurement begins.

---

[9] As noted above in note 6, requiring this information to be inputted into the claimed apparatus in advance of acquiring data is consistent with the further requirement that the device also be prearranged in a particular configuration for acquiring the image data "along a geometric plane that intersects the spray plume."

**III. Conclusion**

As described above, a review of the intrinsic and extrinsic record establishes that the limitation "at a predetermined instant in time" be construed as requiring the claimed apparatus to have the image data capture period determined and inputted into the claimed apparatus *before* any data images are acquired.  In light of the above, Innova respectfully requests that this Court accept its construction of claim 3 of the '400 Patent.[10]

                                      Respectfully submitted,

                                      INNOVASYSTEMS, INC.

                                      By its attorneys,

                                      /s/ Timothy J. Szuhaj_____
                                      Timothy J. Szuhaj, Esquire
                                      *tszuhaj@beckermeisel.com*
                                      BECKER MEISEL LLC
                                      220 Lake Drive East, Suite 102
                                      Cherry Hill, NJ 08002
                                      (856) 779-8700

                                      /s/ Jeffrey E. Francis_____
                                      Jeffrey E.  Francis (BBO # 639944)
                                      *jfrancis@sandw.com*
                                      SULLIVAN & WORCESTER LLP
                                      One Post Office Square
                                      Boston, Massachusetts 02109
                                      (617) 338-2800 (phone)
                                      (617) 338-2880 (fax)

Date: May 5, 2010

---

[10] As explained in Innova's Response to Proveris Scientific Corporation's Motion for Contempt, the redesigned ADSA does not permit or enable the image data capture period to be pre-selected or limited prior to data acquisition (*i.e.*, the device cannot be preset to capture only a limited set of images occurring during the desired time period).  Rather, only after a complete set of data images is captured can ADSA-acquired data be manipulated in order to select certain frames for analysis.  As such, ADSA  cannot and does not literally or equivalently infringe independent claim 3 or any claims depending therefrom of the '400 Patent.

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 5, 2010

                                              /s/  Timothy J. Szuhaj
                                              Timothy J. Szuhaj