```
 1              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
 2
                                        Civil Action
 3                                      No. 05-12424-WGY

 4   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  **
                                       *
 5   PROVERIS SCIENTIFIC CORPORATION,  *
                                       *
 6            Plaintiff,               *
                                       *
 7   v.                                *    HEARING
                                       *
 8   INNOVASYSTEMS, INC.,              *
                                       *
 9            Defendant.               *
                                       *
10   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  **

11

12            BEFORE:  The Honorable William G. Young,
                          District Judge
13
     APPEARANCES:
14
                 GREENBERG TRAURIG, LLP (By Victor H. Polk,
15       Jr., Esq.), One International Place, 20th Floor,
         Boston, Massachusetts 02110
16           - and
                 SUSAN HAMMER FARINA, General Counsel,
17       Proveris Scientific Corporation, 142 North Road,
         Suite R, Sudbury, Massachusetts 01776, on behalf
18       of the Plaintiff

19               BECKER MEISEL LLC (By David J. Sprong,
         Esq.), 354 Eisenhower Parkway, Plaza II, Suite
20       1500, Livingston, New Jersey 07039
             - and -
21               `SULLIVAN & WORCESTER (By Jeffrey E.
         Francis, Esq.), One Post Office Square, Boston,
22       Massachusetts 02109, on behalf of the Defendant

23
                                        1 Courthouse Way
24                                      Boston, Massachusetts

25                                      May 20, 2010
```

 1          **THE CLERK:**  All rise.  Court is in session, please

 2   be seated.

 3          Calling Civil Action 05-12424, Proveris v.

 4   Innovasystems.

 5          **THE COURT:**  Good afternoon.  Would counsel identify

 6   themselves.

 7          **MR. POLK:**  Good afternoon, your Honor.  Victor Polk

 8   for the plaintiff.

 9          **MS. FARINA:**  Susan Farina for the plaintiff.

10          **MR. SPRONG:**  Good afternoon, your Honor.  David

11   Sprong from the law firm of Becker Meisel in New Jersey.

12   I've been admitted pro hac in this case for the defendant.

13          **MR. FRANCIS:**  Your Honor, Jeffrey Francis from

14   Sullivan and Worcester for the defendant.

15          **THE COURT:**  Well, good afternoon.

16          I've read the papers, including the reply

17   memorandum filed yesterday, and let me, let me see if I

18   understand.

19          Innova says in essence that in the construction of

20   claim 3 I should import the phrase from the preamble because

21   if I don't then the breadth that a reasonable reading of

22   claim 3 will have will be so broad as to be obvious under

23   admitted prior art, and you cite authoritative Federal

24   Circuit precedent to the effect that claims are not to be so

25   construed.

1          Have I got it?

2          **MR. SPRONG:**  Essentially correct, your Honor.  It

3    would be anticipated, not obvious.

4          **THE COURT:**  Thank you.  I stand corrected.  All

5    right, it would be anticipated because the elements of the

6    claim are all in some prior, piece of prior art.

7          Now, my problem with that is, though I've allowed

8    you a Markman hearing, I don't see that the question of

9    obviousness is open in this case, it's obviated by prior

10   proceedings.  The way this case comes before me is whether I

11   should enforce a permanent injunction against Innova's

12   device.

13         **MR. SPRONG:**  Right, your Honor.  But as you may

14   recall, the proceedings did not address claim 3.

15         **THE COURT:**  But they could have.

16         **MR. SPRONG:**  They could have, but there was no

17   construction ever determined one way or another, and the

18   decision and the injunction calls out claims 1 and 2 only.

19   Indeed, I looked at the transcript recently and there was

20   some discussion about whether or not the injunction would,

21   that the language of the injunction would be construed to

22   include claim 3 and your Honor said on the record that that

23   claim had not been determined and declined to extend the

24   injunction that far.  I don't have page and line in front of

25   me but --

1   **THE COURT:**  So your point is that when I raised you

2   law of the case and the permanent injunction it is you say

3   you're enjoined from infringing claims 1 and 2 and you say

4   they don't claim -- well, let's ask them.  Let's stop there

5   and ask them.

6   He's right, I think.  So, are you saying they

7   infringe claims 1 or 2?

8   **MR. POLK:**  Actually that isn't the right history of

9   the case, your Honor.

10   **THE COURT:**  All right.

11   **MR. POLK:**  What happened, if you recall, is that

12   you found as a matter of law that they had conceded

13   infringement on claims 3 through 13, omitting 11, and that

14   as a matter of law they had not presented sufficient

15   evidence on validity and you, you did a JMOL on both issues.

16   **THE COURT:**  All right.

17   **MR. POLK:**  So you found infringement.

18   **THE COURT:**  His point is the scope of the

19   injunction; what does the injunction say.

20   **MR. POLK:**  And the injunction does not call out any

21   claims.

22   **THE COURT:**  At all?

23   **MR. POLK:**  At all.  As it is written.  It calls

24   out, which is I think the proper way the Court was to

25   proceed, because it isn't enjoining somebody from infringing

1    a patent, it is from selling a particular configuration of a

2    product.

3           THE COURT:  All right.

4           MR. POLK:  And that's what you did in paragraph 7

5    of the injunction.  You ordered -- and you actually crossed

6    out the references to the claims.

7           THE COURT:  Okay.

8           MR. POLK:  And so you said don't, you can't sell,

9    offer to sell, manufacture.

10          THE COURT:  Well, let's, let's see where we are

11   here.  You're both right.  That's correct, isn't it?

12          MR. SPRONG:  It's correct in terms of what the

13   injunction says, your Honor, but it's not correct in terms

14   of, in terms of whether -- let me put it a different way.

15   What's been accused, or what we've been accused of is a new

16   device infringing that patent.  So --

17          THE COURT:  I, I -- that I have understood.

18          MR. SPRONG:  Understood.  But part and parcel of

19   that determination is that the workaround, what was, went to

20   a specific claim limitation that was not adjudicated, and

21   part and parcel of that workaround including, included a

22   review of the proceedings below, or in this Court, of the

23   proceedings in the Federal Circuit and a determination that

24   there is no res judicata or collateral estoppel effect of

25   anything that was determined --

1          **THE COURT:**  Wait a minute.

2          **MR. SPRONG:**  -- with regard to claim 3.

3          **THE COURT:**  Wait a minute.  Let me, let me state

4    where I think we are because what you're saying to me

5    makes -- I recall, and then you, more than just talking,

6    let's see actual documents that make it clear that this, if

7    my current approach is mistaken.

8          After reading these papers, I see no occasion to

9    construe at this stage claim 3 or to import into claim 3 a

10   limitation from the preamble.  If you had a valid argument

11   that without doing that claim 3 would be invalid as

12   anticipated that had to be raised in the underlying case,

13   and it's too late.  We don't go back and just start over.

14   The injunction enjoins the device.

15         Now, it may be that your so-called workaround is,

16   is a new device in which case, fine, there's no, no

17   liability.  But I'm not disposed to go back to the beginning

18   and relitigate matters which you could have but did not

19   litigate before.

20         **MR. SPRONG:**  Well, your Honor --

21         **THE COURT:**  Now, what's wrong with that?

22         **MR. SPRONG:**  The, the Court determined infringement

23   based apparently on an admission of infringement.  And at

24   that time there was no claims construction done.

25         **THE COURT:**  Yes.

1          **MR. SPRONG:**  And so if the Court is saying that, if

2    the Court is saying that the, the failure to, the failure to

3    call to your Honor's attention that while making a judgment

4    as a matter of law on the admissibility, or the admission of

5    infringement there should have also been a determination of

6    validity, I can accept that for now, for the purposes of

7    this argument.  But still, the law that we placed in our

8    reply papers show that it's not a question of the validity

9    defense.  We would still argue that we have that defense

10   because nothing has been decided on the merits.  These

11   claims were not decided on the merits and --

12          **THE COURT:**  Right.

13          **MR. SPRONG:**  -- that's our argument.  But --

14          **THE COURT:**  I understand your argument.

15          **MR. SPRONG:**  But if you grant, if your Honor has

16   granted this Markman hearing it's for the purposes of

17   construing this claim for claim construction.

18          **THE COURT:**  But I'm saying --

19          **MR. SPRONG:**  And I'm --

20          **THE COURT:**  -- on reflection it seems to me there's

21   nothing to construe.

22          **MR. SPRONG:**  And I'm saying that whether it's

23   couched invalidity it might be different because it is

24   improper to construe a claim in such a way that would render

25   it invalid.  Even as a matter of law it couldn't be invalid,

1  if what we're doing is construing the claim it has to be

2  construed in a way that it's not invalid.

3       **THE COURT:**  Here's my analysis.  Under the

4  constitution I'm limited to resolving case and

5  controversies.

6       **MR. SPRONG:**  Understood.

7       **THE COURT:**  The law of this case is that claim 3,

8  claim 3 now, is infringed.  Implicit in that is that it's

9  valid.  Because, and you just said it back to me, if it had

10  been, if Innova wanted to challenge its validity, the time

11  to have challenged its validity was long ago when the case

12  was first raised.

13       Now, that's how I'm proceeding.  So I'm, I'm not

14  holding any further Markman hearing, I'm not importing

15  anything out of the preamble into claim 3, and I'm

16  proceeding on the basis of law of the case that claim 3 is,

17  one, valid, and two, infringed by the original accused

18  device.

19       Now, that's as far as I can go.  And --

20       **MR. SPRONG:**  But, your Honor --

21       **THE COURT:**  -- I know you disagree with that.

22       **MR. SPRONG:**  I understand.

23       **THE COURT:**  And your rights are saved.

24       **MR. SPRONG:**  But as a practical matter, and I

25  assume, I'm sorry for taking the next step, but there then

1  will be a trial as to whether the new device infringes the

2  patent, or said another way, it violates the order.  And the

3  only way it can violate the order is if it's infringing.

4      **THE COURT:**  That seems to follow.

5      **MR. SPRONG:**  Okay.  The only way that the Court can

6  make a determination of infringement without us admitting it

7  again, which we won't, and having that opinion, there needs

8  to be a construction of the claim.

9      **THE COURT:**  I've just given it to you.  It is as

10  matter of law of the case, it does not import into the

11  language, this language that you want imported from the

12  preamble.  That's the Court's construction.  There you are.

13      Now, knowing that -- and I'm trying to be practical

14  and save, save you money here -- what remains then to be

15  tried.  If I'm not going to do that, and I'm not, and I can

16  be reviewed on it, is there anything really to be tried

17  here?

18      **MR. SPRONG:**  If, if validity is out and the

19  construction is as I understand it verbatim as it's read in

20  the six lines of the body of the claim and --

21      **THE COURT:**  I think that's --

22      **MR. SPRONG:**  -- eliminating the six --

23      **THE COURT:**  I think that's right.

24      **MR. SPRONG:**  -- the six lines of preamble.

25      **THE COURT:**  It's omitting the preamble, that's

1    correct.

2         **MR. SPRONG:**  I mean, it's almost like neither our

3    proposed construction nor the plaintiff's proposed

4    construction is verbatim what's in the body of the claim.

5    And so, I have to consider whether, I don't know that it was

6    ever looked at.

7         **THE COURT:**  Let's try it another way because I'm

8    trying to be practical.  Let's give Mr. Polk a chance.  I'm

9    not saying you have to agree with it.

10        Now, Mr. Polk, it sounds like, as I listen to

11   myself talk, that you are going to tell me you've won.

12        **MR. POLK:**  Your Honor, the only basis they opposed

13   our original contempt papers was this construction of the

14   preamble.  That is the only change that they have said

15   between the products.

16        **THE COURT:**  They've lost on that.

17        **MR. POLK:**  And, and --

18        **THE COURT:**  But they're not going to concede.

19        **MR. POLK:**  But here's the problem.

20        **THE COURT:**  And I'm not even going to suggest that

21   they concede.

22        **MR. SPRONG:**  Nor are we going to concede

23   willfulness or intentional infringement or any of the other

24   issues that arise under the infringement trial.

25        **THE COURT:**  I understand.  I understand.  Now I've

1    asked.  So they're making no concessions and that's their

2    right and the Court respects it.

3            **MR. POLK:**  Okay.  The law is fairly clear on this,

4    your Honor, which is that the first thing that they have to

5    show, on a contempt, in a contempt process is that the

6    product that they're selling now is materially different

7    from the product they were enjoined from selling.  Because

8    if it's the same product at least as it relates to the

9    claims in the patent then there is, there is --

10           **THE COURT:**  I don't think they have to show

11   anything.  You have to show --

12           **MR. POLK:**  Okay.

13           **THE COURT:**  You have to show that it's not

14   materially --

15           **MR. POLK:**  I'm sorry.  You're absolutely right.

16   And we are very confident of the ability to do that, because

17   we have the user manuals.  We know, we know the --

18           **THE COURT:**  That's an answer.

19           **MR. POLK:**  But also understand that we've also

20   conducted discovery and we've asked for any differences.

21           **THE COURT:**  Okay.  So you're prepared to do that.

22           Now, back to the defense.  Is this something --

23   again, you're entitled to, you're entitled to justice and

24   I'm simply trying to see how we get at it with an okay

25   record.

1          What do we do?  Summary judgment?  Have a trial?

2     What, what would you think we ought do now?

3          **MR. SPRONG:**  I think that if the issue is

4     infringement --

5          **THE COURT:**  That's the issue.

6          **MR. SPRONG:**  -- then we have a trial.  I think that

7     if the issue is contempt then we have a hearing that's --

8          **THE COURT:**  I'm not disposed, I'm not disposed to

9     hold you in contempt.

10          **MR. SPRONG:**  Understood.

11          **THE COURT:**  I'm not disposed to because I think

12     patent matters are complex and there has to be undoubted

13     disobedience, and you say you've got some sort of opinion.

14          Now, you are entitled, unless it goes off on --

15     again, I'm simply trying to be practical.

16          **MR. SPRONG:**  Understood.

17          **THE COURT:**  Without asking you to concede anything,

18     if this matter is fairly obvious, maybe we ought to set it

19     up for summary judgment, have argument, you're not conceding

20     anything, but if it's fairly obvious, on the likelihood that

21     you'll lose, I'll enter whatever orders I enter to stop you

22     and you can take me up on it.

23          **MR. SPRONG:**  Okay.

24          **THE COURT:**  On the other hand, and I'm asking you,

25     Mr. Polk can speak for himself, if you think it needs a

1    trial, I'm not going to say you can't bring a motion for

2    summary judgment, but I'm now going to schedule the trial,

3    jury waived as we discussed, and I'll get to it as soon as I

4    can.

5              So what do you think?

6         **MR. SPRONG:**  Well --

7         **THE COURT:**  And that will be more expense.  And

8    again, my mind is open.  I have no idea what the current

9    accused device is --

10        **MR. SPRONG:**  Right.

11        **THE COURT:**  -- or how it works.

12        **MR. SPRONG:**  So --

13        **THE COURT:**  That I haven't considered.

14        **MR. SPRONG:**  Certainly, your Honor, I think that --

15        **THE COURT:**  So what do you think?

16        **MR. SPRONG:**  -- your suggestion is a good one

17   because to me it's sort of the kind of thing that you might

18   do in a preliminary injunction context before you get to

19   trial where you have a preliminary decision that might

20   resolve an ultimate resolution of all the issues in the

21   case.  I think that, I think that scheduling an opportunity

22   for summary judgment prior to actually conducting a

23   full-blown trial would be beneficial to both of our clients.

24   I don't think you could get there, though, without discovery

25   first.  There would have to be some level of expedited

1    discovery, or maybe not even expedited discovery, just

2    regular discovery, to take the depositions of the people who

3    made the accusations and the people who performed the

4    workaround and perhaps even experts on the issues of damages

5    and such.

6              **THE COURT:**  I'm listening to you.

7              **MR. SPRONG:**  And so for all those reasons, your

8    Honor, I think a period of discovery followed by a period of

9    summary judgment briefing would be the most sane -- sane's

10   the wrong word -- the most, the most beneficial way to both

11   of our clients.

12             **THE COURT:**  Let me -- now you're talking.  I, I

13   don't see my way through damages if any there be, and I want

14   to be cautious here, without an evidentiary hearing.  That

15   seems to bite off too much.  I am suggesting, and I don't

16   want you to think I'm prejudging it, because I'm not, but

17   you are responsive to the suggestion, I am suggesting that

18   the issue of infringement, the liability issue might be

19   resolved on summary judgment.

20             **MR. SPRONG:**  Fair enough.

21             **THE COURT:**  Might be.  And you agree, it might be,

22   though you would argue against it.

23             **MR. SPRONG:**  I certainly would think that --

24             **THE COURT:**  And my mind is open.

25             **MR. SPRONG:**  And I certainly think that it's worth

1    the effort and given the cost savings that it might present.

2         **THE COURT:**  All right.  Now, let me speak to Ms.

3    Smith.

4         (Whereupon the Court and the Clerk conferred.)

5         **THE COURT:**  Mr. Polk, what do you think?

6         **MR. POLK:**  A few things, your Honor.  And part of

7    this is a kind of, a conceptual issue about whether it's the

8    contempt that we are trying versus an infringement that we

9    are trying to resolve.  And I speak only because I think

10   you're operating under a misapprehension, if I'm allowed to

11   say that, which is --

12        **THE COURT:**  Of course you're allowed to say it.

13        **MR. POLK:**  Well, you know, it's with all due

14   respect and all those things.  But you seem to be operating

15   on the notion that for there to be a contempt that there has

16   to be willfulness, bad faith, all of those things --

17        **THE COURT:**  No.

18        **MR. POLK:**  -- and the opinion resolves that issue.

19        **THE COURT:**  The standard is a clear and undoubted

20   disobedience of a clear and unequivocal order.

21        **MR. POLK:**  And I think, your Honor, that -- I

22   understood you didn't want to do it on the papers, and I

23   understood that.  But I think especially with the claim

24   construction that that is the situation here and that this

25   should be determined as a matter of contempt as opposed to a

```
 1    new whole trial on the issue.

 2         THE COURT:  I'm not, I'm not asking you to give up

 3    anything.  I'm simply saying to you what my current thinking

 4    is.  And whatever label you want to put on this proceeding,

 5    it seems to me I've got to compare the current accused

 6    device with the formerly accused device that has been

 7    determined to be infringing in light of, and the key claim

 8    seems to be, in light of the key claim, claim 3, which I

 9    have now construed.

10         Now, that's the intellectual and judicial duty

11    that's imposed upon me.  Now, step one of that I thought

12    could be accomplished by the summary judgment mechanism, and

13    that's what I'm asking you about.

14         MR. POLK:  And, I'm sorry, your Honor, because I

15    was worried about the semantic label.

16         THE COURT:  Okay.  I'm not asking him to concede

17    it.  But he's been good enough, and I take it it's good

18    enough to face up to it.

19         MR. POLK:  And I think that's right, your Honor.

20         THE COURT:  Okay.

21         MR. POLK:  I think that would be the --

22         THE COURT:  So my question to you is when?  When do

23    you want to be heard on it?

24         MR. POLK:  I honestly think we can be heard

25    immediately, but I heard my brother saying that he wants,
```

1    that there be some discovery and we would obviously want to

2    take some.  But I'm hoping to limit the amount of discovery.

3            THE COURT:  I can give you argument Friday two

4    weeks from now, Friday -- yeah, two weeks from this Friday.

5            MR. SPRONG:  Your Honor, I think that's, given the

6    fact that the witnesses are basically from here to North

7    Carolina --

8            THE COURT:  All right.  You say that's too fast.

9            MR. SPRONG:  It's probably too fast.

10            THE COURT:  When do you want to do it?

11            MR. SPRONG:  I would certainly --

12            THE COURT:  Order of magnitude.

13            MR. SPRONG:  I would certainly think --

14            THE COURT:  Sometime in June?

15            MR. SPRONG:  Sometime in mid, even into late June.

16            THE COURT:  He's okay with that.  All right, we'll

17    let Ms. Smith suggest a time.  It would be an afternoon

18    then.

19            THE CLERK:  June 16th at two o'clock?

20            MR. POLK:  June 16th actually does work.

21            MR. SPRONG:  Your Honor, the one thing I would

22    think would be the briefing schedule.

23            THE COURT:  Well, I'm about to set it.

24            MR. SPRONG:  But we still would require a couple of

25    weeks for the discovery.

 1          THE COURT:  And you're going to start jumping

 2     through hoops to get it because --

 3          MR. SPRONG:  Fair enough.  Fair enough.

 4          THE COURT:  -- what I'm going to propose now,

 5     today, the 20th of May, it's the 16th of June, we'll give

 6     him half that time, we'll give him until the 2nd to file his

 7     brief and we'll give you to Friday the 11th to file yours.

 8     How's that?

 9          MR. SPRONG:  Fair enough.

10          THE COURT:  And I'll be ready for argument on the

11     16th.  You're to cooperate on discovery.

12          MR. SPRONG:  Fair enough.

13          THE COURT:  All right.  Now, so we're clear, and,

14     Mr. Polk, I was talking to him and I think he's got it, let

15     me be clear with you.  All I'm going to consider is whether

16     as matter of summary judgment, which means I take all

17     intendments against you, though it's jury waived, but I'm

18     taking all intendments against you, whether on the

19     evidentiary materials I have at summary judgment there is

20     infringement.  If there's infringement on the undisputed

21     facts you'll win.  If, if -- and it's possible you could

22     lose.  If there's no infringement, as matter of law the case

23     is over and either side can appeal.  If it won't resolve on

24     summary judgment, we will then schedule a jury waived trial.

25          Now, let's say, and I'm not prejudging it, let's

1  say Proveris wins.  This has nothing to do with damages, and

2  at the time I resolve it, either that day or whenever I do,

3  we will then schedule an evidentiary hearing on remedy.  I

4  won't say just damages but on remedy.

5           **MR. SPRONG:**  Right.

6           **THE COURT:**  Now, Mr. Polk, you understand that and

7  you're okay with it?

8           **MR. POLK:**  Can I get one clarification?

9           **THE COURT:**  Right.

10          **MR. POLK:**  You said we're going to try whether

11  there's infringement.

12          **THE COURT:**  Yes.

13          **MR. POLK:**  Because, because of the law of the case,

14  my version of what that means, so that we're clear, is is

15  there any material difference between the new product and

16  the old product which was found to have infringed.

17          **THE COURT:**  That's what I'm thinking.

18          **MR. POLK:**  Thank you, your Honor.

19          **MR. SPRONG:**  But if that would be the contempt

20  standard, your Honor, the infringement standard would be

21  simply whether the product is infringing.  There is really

22  just a question that that -- there's a question about

23  whether the product infringes.

24          **THE COURT:**  That can be briefed and argued.

25          **MR. SPRONG:**  Fair enough.

1              THE COURT:  That can be briefed and argued.

2              MR. SPRONG:  Your Honor, I think that --

3              THE COURT:  Would you state your name again.

4              MR. SPRONG:  I'm sorry.  David --

5              THE COURT:  Mr. Polk I know.  It gets him nothing,

6     but I like to call people, I like to call people by their

7     name.

8              MR. SPRONG:  My name is David Sprong.

9              THE COURT:  Yes, Mr. Sprong, you are certainly

10    welcome and I'll try to learn your name.

11             MR. SPRONG:  Okay.

12             THE COURT:  All right.  I think we're clear.

13    Anything else?

14             MR. SPRONG:  Yes.  Your Honor, then if we were to

15    move on to, if infringement, as you call it liability of

16    infringement were determined, then I think we would have an

17    evidentiary hearing on remedy and that would require an

18    additional brief round of discovery as to what damages may

19    be --

20             THE COURT:  You're both sounding reasonable in

21    terms of time.  So you know my time, I intend to work

22    through July.  I want to take some time in August.

23             MR. SPRONG:  Okay.

24             THE COURT:  So I think --

25             MR. SPRONG:  Well, we will discuss that when --

1      **THE COURT:**  And we'll discuss --

2      **MR. SPRONG:**  -- when the time comes.

3      **THE COURT:**  -- that downstream.

4      **MR. SPRONG:**  Right.

5      **THE COURT:**  This is an injunctive matter, that's

6  why it's, I'm doing it jury waived.  I'm sensitive to the

7  need of both parties for resolution.

8      And on that note, should the matter resolve, a

9  simple phone call to Ms. Smith is all that's required.

10  Don't ever make that phone call unless it's definitely

11  resolved because I will do everything, I'll say you're

12  judicially estopped, I'll say it's a contract case, not a

13  patent case, I'll say you all need to new counsel because

14  you people are witnesses to the settlement.

15      In short, I grease the skids to settlement.  But

16  don't ever call unless it's really settled because I don't

17  want to unwind it.

18      **MR. SPRONG:**  Understood.

19      **THE COURT:**  Thank you all very much.

20      **MR. SPRONG:**  Thank you, your Honor.

21      **MR. POLK:**  Thank you, your Honor.

22      **THE COURT:**  We'll hear this on the 16th at

23  2:00 p.m.  We'll recess.

24      **THE CLERK:**  All rise.  Court is in recess.

25      (Whereupon the matter concluded.)

1                    **C E R T I F I C A T E**

2

3

4          I, Donald E. Womack, Official Court Reporter for

5     the United States District Court for the District of

6     Massachusetts, do hereby certify that the foregoing pages

7     are a true and accurate transcription of my shorthand notes

8     taken in the aforementioned matter to the best of my skill

9     and ability.

10

11

12

13              /S/ DONALD E. WOMACK 6-16-2010
                _____
14                   DONALD E. WOMACK
                   Official Court Reporter
15                     P.O. Box 51062
                Boston, Massachusetts 02205-1062
16                  womack@megatran.com

17

18

19

20

21

22

23

24

25