UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROVERIS SCIENTIFIC CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INNOVASYSTEMS, INC., )<br>)<br>Defendant. )<br>) | Civil Action No.: 05-12424 WGY |

### INNOVASYSTEMS, INC.'S RESPONSE TO PROVERIS SCIENTIFIC CORPORATION'S MOTION TO COMPEL

Defendant, InnovaSystems, Inc. ("Innova") hereby opposes Proveris Scientific Corporation's ("Proveris") Motion to Compel. For the reasons set forth below, the instant motion should be denied.

### INTRODUCTION

In view of the Court's September 21, 2010 Order in this action, the only issue left before this Court is an appropriate remedy for contempt, if any. Importantly, in the underlying case, the jury awarded zero damages to Proveris for infringement, and this decision is the starting point for the Court in considering any contempt sanction. However, Proveris essentially asks the Court to disregard the jury's verdict in this case through, of all things, a motion to compel discovery. Rather than actually seek discovery, which incidentally it has already obtained, Proveris wrongfully uses the instant motion as a vehicle to reargue the issue of willfulness. However, this position is misguided at best, and indeed, Proveris actually admits to the contrary in its motion that the issue of "liability" has already been decided by the Court.

Of course, the question of willful infringement, or the lack thereof, is a question of "liability" that has long been decided in this case. Perhaps more importantly, this Court has already rejected a finding of willfulness as to Proveris' contempt application. Further, the Court's September 21 Order does not provide that the contempt was in any way willful or intentional. Moreover, throughout the contempt proceedings before this Court, the Court has acknowledged that Innova obtained in good faith a non-infringement opinion. *See e.g.,* May 20, 2010 Hearing, Transcript p. 12. Although the Court has apparently decided that this opinion was mistaken, and that Innova was unwittingly in contempt of this Corut's Order, absolutely nothing in the Court's September 21 Order, or in the numerous proceedings leading up to that Order, indicates any finding of deliberate contempt on the part of Innova. Therefore, only the issue now before this Court is that of an appropriate sanction, if any, for Innova's innocent contempt.

As the Court will recall, the Court's prior direction in this case served to bifurcate Proveris' contempt application. Simply put, we have now reached the remedy phase. Accordingly, Proveris' motion carries with it a false sense of urgency. Indeed, the instant motion belies the fact that the Court has not entered a Scheduling Order or given the parties any direction whatsoever with regard to what discovery, if any, needs to be or may be conducted into this singular remaining question. Rather than make the instant motion, Proveris could have simply called the Court's attention to the fact that the sanction phase must commence and request a corresponding scheduling order. But instead, Proveris chose to make a motion to compel to disguise its attempts to take a second bite at the willfulness apple, to curry favor with the Court and to sling mud at Innova. Thus, the instant motion is, at best, unnecessary.While Proveris claims

erroneously that it has not received adequate discovery responses from Innova, the truth is that Proveris has received that very discovery both from Innova and from third parties, *and even cites same in its motion*. *See* the accompanying Declaration of John J. Waters (the "Waters Decl.") at ¶ 4. This is further evidence that Proveris' motion is not made in good faith to obtain necessary discovery, but instead is designed only to argue willfulness and to harass and vilify Innova. Thus, the instant motion is not only unnecessary, but also downright frivolous.

Worse still, not only does Proveris already have the discovery that it makes the subject of this motion, some of the discovery it seeks is wholly irrelevant to the question now before this Court. Proveris is apparently under the erroneous belief that sanctions in a patent case are somehow based on disgorgement of a defendant's profits, which is simply not the case. Indeed, Proveris fails to cite even a single authority to support its flawed position, because it cannot. Instead, it is well-settled in patent cases that the correct measure of a contempt sanction, if any, is generally based on traditional patent damages--either the plaintiff's lost profits or a reasonable royalty. 35 U.S.C. §§ 283 and 284. *See also*, *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Thus, in an ironic twist, it is Innova that is entitled to compel discovery from Proveris regarding its profits and lost profits, if any, should the Court deem that further discovery in this matter is necessary and appropriate.

Finally, Innova is compelled to call to the Court's attention that Proveris, in gathering the discovery at issue in this matter, has made bold-faced misrepresentations to third-parties and customers of Innova regarding: (i) the proceedings before this Court, (ii) the scope of the '400 Patent, (iii) the effect of this Court's orders on third-party non-

litigants, and (iv) culpability for activities outside of the United States. Waters Decl. at ¶¶ 7-8. In short, Proveris is improperly using the legal process of this Court to approach third-parties under the guise of gathering discovery to wrongfully disparage Innova and interfere with its business. Such conduct completely undermines the need for Proveris' motion to compel, and likewise provides grounds for affirmative claims by Innova against Proveris, which claims are hereby expressly reserved. *See eBay, Inc. v. MercExchange*, 547 U.S. 388, 396 (2006).

In sum, Proveris is improperly using the instant motion to interfere with Innova's business (even business that is wholly unrelated to the patent at issue), to obtain more relief than it is entitled to in this matter and to further its stated intent to put Innova out of business world-wide. Innova respectfully submits that the Court cannot condone such bad faith conduct, and should deny Proveris' motion and proceed with the sanction phase in a manner that the Court deems just and appropriate.

## BACKGROUND

The jury in this matter awarded Proveris $0.00. Almost three years after the jury verdict and despite the wholly understandable rationale that contempt proceedings are an extraordinary proceeding and that generally "work arounds" are entitled to full review, Proveris took the limited and clearly calculated step to seek contempt despite knowing that it had a very narrow Injunction based upon, at most, an evidentiary admission of infringement. Proveris knowingly chose this route instead of a new trial to avoid the overwhelming amount of prior art that anticipates the '400 Patent. Proveris' conduct with respect to third parties is further indicia of this choice. It is a fact that Proveris has not sued: (i) other manufacturers that produce devices that arguably infringe the overly

broad '400 Patent; or (ii) any OSA or ADSA users—presumably out of fear that the '400 Patent will be invalidated. Proveris is now seeking to relitigate the issues of willfulness and damages.

Innova has vigorously defended the contempt allegations made by Proveris. On April 21, 2010, after the hearing on Proveris' contempt application, the Court issued an order which appeared to deny the plaintiff's motion for contempt. Although Proveris' Motion for Contempt was apparently denied, the Court nonetheless ordered the parties to prepare claim construction briefs regarding the at-issue claims of the '400 Patent and ordered a hearing on the same for May 20, 2010.

Both parties submitted claims construction papers as order by the Court. At the May 20th hearing, the Court determined, <u>inter</u> <u>alia</u>, that damages would be tried in a separate phase. Further, the Court ordered the parties to file summary judgment papers on the matter of infringement.

As admitted by Proveris, Innova completed its response to discovery on May 25, 2010. In fact, Innova has produced a large volume of documents in this current matter. On May 12, 2010, Innova produced 43 documents related to the CKVN Opinion. On May 14, 2010, Innova produced six documents related to the construction and distribution of ADSA. On May 18 and 25, 2010, Innova produced 31 documents comprised of price lists and customer invoices all directly related to the pricing and sale of ADSA.

On the next day, May 26th, counsel for Proveris deposed John J. Waters, President of Innova, for close to five hours. The questioning included sales information related to ADSA.

Subsequently, on June 2, 2010, Proveris filed its Motion for Summary Judgment of contempt. In reply, Innova, filed its opposition to Proveris' Motion for Summary Judgment and filed its own cross-motion for Partial Summary Judgment as to the issues of contempt and willful infringement on June 11, 2010. On June 16, 2010, the Court heard argument on the Summary Judgment Motions. Immediately thereafter, on June 23, 2010, the parties engaged in a day-long mediation before Magistrate Judge Niedermeier.[1] Despite Innova's good faith attempts to settle the case and without legal basis or deference to Magistrate Judge Niedermeier, Proveris demanded all of Innova's revenue related ASDA and also demanded that Innova leave the spray-pattern business on a world-wide basis. Waters Decl. at ¶ 9. Settlement could not be reached in light of Proveris' outrageous positions. On September 21, 2010, this Court entered an Order finding Innova in contempt.

Despite having admittedly received a substantial amount of discovery form Innova and third-parties,[2] Proveris filed its Motion to Compel on October 20, 2010. In support of the Motion, Proveris again filed a self-serving affidavit of Mr. Zachary W. Pitluck. The Pitluck Affidavit is incorrect and should be disregarded as nothing more than a baseless attempt to raise the willfulness issue and based upon unsupported third-party statements and mischaracterizations. Waters Decl. at ¶¶ 5-6.

---

[1] Innova notes that Mr. Polk did not attend the mediation.

[2] Proveris received documents from at least ten (10) third-parties: Abbott Laboratories, Amneal Pharmaceutical, Coherent, Exemplar, Irvine Analytical Services, Meda Pharmaceutical, Merck & Co., Inc., PPD, Inc., University of Maryland and Valois of America (Pfeiffer of America). Further, on October 8, 2010, Proveris served six additional third parties with subpoenas: MeadWestVaco, NextBreath LLC, NovaDel Pharma, Inc., MedImmune LLC, UDL Laboratories, Inc. and Mylan Pharmaceuticals.

## ARGUMENT

### A. No Willfulness

In light of the contents of Proveris' Motion to Compel, Innova is forced to address the continued erroneous accusations of willfulness. As the Court has recognized, there is no "undoubted disobedience" of the Court's Permanent Injunction to sustain any finding of willfulness. May 20, 2010 Hearing Transcript pp. 11-12 & 15.

This Court's decision in the underlying case guided Innova in the continuation of its business, and thus, Innova's conduct in this regard clearly cannot constitute deliberate disobedience or willful infringement. On the contrary, after the Injunction was entered, Innova retained the services of the CKVN Firm, to review the scope of claim 3 and claims 4-13 of the '400 Patent. Based on the analysis of the CKVN Firm regarding the interpretation and scope of these claims, and after devoting substantial time and resources to reasonably determine the scope of claim 3, Innova created its new ADSA product. The CKVN firm ultimately memorialized its opinion in this regard in a February 27, 2009 written opinion, the CKVN Opinion,[3] which is part of the record in this matter. The CKVN Opinion concluded "that a properly informed court or jury should find that the ADSA products that are made or sold by Innova as described below and in the ADSA Station User's Guide…do not infringe claim 3 or dependent claims 4-13 of the '400 [P]atent, either literally or under the doctrine of equivalents."[4] CKVN Opinion at p.2. Following an exhaustive analysis aimed at the construction of the relevant claims, the

---

[3] As corrected by the March 25, 2009 revised opinion.
[4] The CKVN Opinion also found that ADSA did not infringe dependent claims 4-13 of the '400 Patent. CKVN Opinion at p. 20. Further, ADSA and OSA are identical with respect to the structural limitations contained in claims 1 and 2 of the '400 Patent and, therefore, ADSA likewise does not infringe claim 1 or dependent claim 2 of the '400 Patent either literally or under the doctrine of equivalents as determined by the jury in this matter.

record of the prior proceedings in this matter, and Plaintiff's own positions and admissions, the CKVN opinion concluded, *inter alia*, that: (i) " the term 'predetermined instant in time' serves to limit the scope of claim 3. . ., and in particular helps define both the geometric plane and the illuminator located in the body of the claim"; and (ii) the "ADSA products do not include at least the requirement of 'each of the images being representative of a density characteristic of the spray plume . . . . at a predetermined instant in time." CKVN Opinion at pp. 18-19.  To the contrary, the CKVN Opinion concluded that the ADSA products "could be considered post-determining the data that is relevant for analysis" and, therefore, "the Innova ADSA products do not allow the desired data or images to be selected 'at a predetermined instant in time,' as required in claim 3 of the '400 [P]atent."[5]  *Id*. at p. 19.

Despite this rational and reasonable work around, the Court found contempt. Nevertheless, Innova's actions do not amount to willful conduct subject to sanctions as Innova took commercially reasonable steps to avoid infringing the '400 Patent.  *Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) (although design around attempt was unsuccessful and defendant found to have infringed patent, no award of punitive damages in face of good faith design around effort); *State Indus., Inc. v. A.O. Smith Corp*., 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("[designing around] should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them").  Innova's conduct is clearly supported by the public policies underlying and limiting the rights of patent holders.  *WMS Gaming Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1355 (Fed. Cir. 1999) ("patent law encourages competitors to

---

[5]  In addition to determining that ADSA did not literally infringe the '400 Patent, the CKVN Opinion also determined that ADSA did not infringe the '400 Patent under the Doctrine of Equivalents.  CKVN Opinion at pp. 19-21.

design or invent around existing patents"); *Hilton Davis Chemical Co v. Warner-Jenkinson Company, Inc.*, 62 F.3d 1512, 1520 (Fed. Cir. 1995) ("ability of public successfully to design around—to use the patent disclosure to design a product…that does not infringe…--is one of the important public benefits that justify awarding the patent owner exclusive rights to his invention"); *Westvaco Corp.*, 991 F.2d at 745 (although design around attempt was unsuccessful and defendant found to have infringed patent, no award of punitive damages in face of good faith design around effort); *State Indus.*, 751 F.2d at 1236 (competitor's designing around a patent's claims "is the stuff of which competition is made and is supposed to benefit the consumer").

The above notwithstanding, even if this Court were to entertain Proveris new unsupported and erroneous allegations of "willful" infringement by Innova, Proveris has the burden of showing that the alleged infringing activities: (i) actually occurred and (ii) are subject to U.S. patent law.

First, Proveris completely mischaracterizes the email to Dr. Brodsky. The email was the end of a larger discussion. Waters Decl. at ¶ 5. Dr. Brodsky had contacted Innova first and inquired about the suitability of using spray characterization equipment to measure biological spray from a cough. *Id*. Innova believed that the equipment was not really suitable for the stated purpose and responded with the subject email as a polite way of telling Dr. Brodsky the same. *Id*.

Second, the alleged matter involving Glenmark Pharmaceuticals occurred outside of the United States and falls within the purview of Section 271(f) of title 35. 35 U.S.C. § 271(f). Glenmark is a company located in India. Waters Decl. at ¶ 6. The alleged

9

purchase order for ADSA does not constitute a "component" under Section 271(f). As a result, the purchase order does not fall within the purview of Section 271(f).

"It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). There is one exception, Section 271(f). *Id.* Section 271(f) expands the definition of infringement to include supplying from the United States a patented device's components:

> (1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the *components* of a patented invention, where such components are uncombined in whole or in part, in such manner as to *actively induce the combination of such components outside of the United States* in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> (2) Whoever without authority supplies or causes to be supplied in or from the United States any *component* of a patented invention that is especially made or especially adapted for use in invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing *that such component will be combined outside of the United States* in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f) (emphasis added).

The United States Supreme Court clarified what qualifies as a "component" under Section 271(f) in *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007). In *Microsoft*, the Court examined whether sending Windows software that contained patented information oversees constituted infringement of Section 271(f). *Id.* at 441-53. In its analysis, the Court noted that "Windows abstracted from a tangible copy no doubt is information-a

10

detailed set of instructions-and thus might be compared to a blueprint (or anything containing design information, *e.g.*, a schematic, template, or prototype)." *Id.* at 450. The Court stated that "[a] blueprint may contain precise instructions for the construction and combination of the components of a patented device, *but it is not itself a combinable component of that device*." *Id.* at 450 (emphasis added).

Likewise, the Federal Circuit examined whether sending overseas instructions for production of patented computer chips was covered under Section 271(f) in *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117-19 (Fed. Cir. 2004). The court stated that phrase "supplies or causes to be supplied" referenced in Section 271(f)(1) "clearly refers to physical supply of components, *not simply to the supply of instructions*[.]" *Id.* at 1118. As a result, the Court held that Section 271(f) was inapplicable to the case. *Id.* Based on the holdings in *Microsoft* and *Pellegrini*, Innova suggests that the mere fact that it sent a purchase order to Glenmark is not a violation of Section 271(f).

### B. Discovery Issues

Proveris' Motion to Compel should be denied as baseless and frivolous. This matter was bifurcated. Memorandum of Law in Support of Proveris' Motion to Compel at 2. We have now reached the remedy phase. The Court has not entered a Scheduling Order, however, or provided any direction as to remdy. Accordingly, Proveris' self-serving implications that Innova has somehow run afoul of the Rules of Civil Procedure or the directions of this Court should be completely ignored.

More importantly, Proveris has received adequate discovery from Innova. As admitted by Proveris, Innova completed its response to discovery on May 25, 2010. On the next day, May 26th, counsel for Proveris deposed John J. Waters, President of Innova,

for close to five hours. The questioning included sales information related to ADSA. Further, Proveris has received a substantial amount of discovery form Innova and from at least ten (10) third-parties and has issued subpoenas to six additional third parties. At the heart of Proveris alleged unanswered discovery is Proveris' misguided attempt to have Innova create an analysis of profits and documents related thereto. Innova has produced a substantial number of responsive documents. Innova is under no obligation to create new documents or to conduct an analysis of the documents produced, however. *See Washington v. Garrett*, 10 F.3d 1421, 1437-38 (9th Cir. 1993) (no obligation to create responsive documents solely to satisfy discovery request).

Moreover, the analysis that Proveris seeks is irrelevant as it relates to the wrong measure of damages, if any, as discussed below.

Based on the facts of this matter, there is no real basis for the Motion to Compel, which should be denied.

### C.     Inappropriate Relief Sought

Again, in the guise of a Motion to Compel, Proveris is seeking to litigate the measure of damages. Proveris is inappropriately seeking Innova's profits and/or all of revenues related to ADSA.[6] The Patent Statute provides for damages "adequate to compensate" for infringement of a patent. 35 U.S.C. §§ 283 and 284. Such damages may be calculated using a royalty theory or a lost profits of the patentee theory. *Id*. *See also*, *Panduit Corp.*, 575 F.2d 1152. Although sanctions for contempt are within the Court's discretion, such are generally governed by the Patent Statute. *Id*. Because the measure of damages sought by Proveris through discovery and as further repeatedly

---

[6] Astonishingly, Proveris wasted both Innova's time and the time of Magistrate Judge Niedermeier by repeatedly asserting that it was entitled to all of the revenue collected by Innova related to ADSA.

asserted by Proveris at the June 23, 2010 mediation are not appropriate, the further discovery allegedly sought by Proveris is not relevant to this case.

In light of the proper measure of any alleged damages, Innova reserves the right to seek further discovery of Proveris.

### D. Proveris' Inequitable Conduct

Proveris' inequitable conduct should not be condoned by this Court. Proveris is using this proceeding to wrongfully gain a commercial advantage in the U.S. and global marketplace. For example, Proveris is contacting third-parties (including those identified in discovery in this matter) and making bold-faced misrepresentations regarding: (i) the proceedings before this Court, (ii) the scope of the '400 Patent, (iii) the effect of this Court's orders on third-party non-litigants, and (iv) culpability for activities outside of the United States. Waters Decl. at ¶¶ 7-8. In short, Proveris is approaching third parties and "scaring" them away from Innova. Such conduct completely undermines Proveris' Motion and likewise provides grounds for affirmative claims by Innova against Proveris. Proveris comes to this Court with unclean hands and should not be rewarded for such.

### CONCLUSION

In light of the above, Innova respectfully requests that this Court deny Proveris' Motion to Compel.

> Respectfully submitted,
>
> INNOVASYSTEMS, INC.
>
> By its attorneys,
>
> /s/ Timothy J. Szuhaj_____
> Timothy J. Szuhaj, Esquire
> *tszuhaj@beckermeisel.com*
> BECKER MEISEL LLC

        220 Lake Drive East, Suite 102
        Cherry Hill, NJ 08002
        (856) 779-8700

        /s/ Jeffrey E. Francis
        Jeffrey E. Francis (BBO # 639944)
        *jfrancis@sandw.com*
        SULLIVAN & WORCESTER LLP
        One Post Office Square
        Boston, Massachusetts 02109
        (617) 338-2800 (phone)
        (617) 338-2880 (fax)

Date: November 3, 2010

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 3, 2010

/s/  Timothy J. Szuhaj
Timothy J. Szuhaj