```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   PROVERIS SCIENTIFIC CORPORATION,

 5                  Plaintiff,          Civil Action
                                        No. 05-12424-WGY
 6   V.
                                        June 21, 2011
 7   INNOVASYSTEMS, INC.,               11:59 a.m.
                  Defendant.
 8   _____

 9

10

11            TRANSCRIPT OF STATUS CONFERENCE

12         BEFORE THE HONORABLE WILLIAM G. YOUNG

13              UNITED STATES DISTRICT COURT

14             JOHN J. MOAKLEY U.S. COURTHOUSE

15                    1 COURTHOUSE WAY

16                    BOSTON, MA  02210

17

18

19

20
                    DEBRA M. JOYCE, RMR, CRR
21                   Official Court Reporter
                   John J. Moakley U.S. Courthouse
22                  1 Courthouse Way, Room 5204
                        Boston, MA  02210
23                        617-737-4410

24

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3   VICTOR H. POLK, JR., ESQ.
     Greenberg Traurig LLP
 4   One International Place
     Boston, MA 02110
 5   617-310-6010

 6


 7   FOR THE DEFENDANT:

 8
     JEFFREY E. FRANCIS, ESQ.
 9   Sullivan & Worcester LLP
     One Post Office Square
10   Boston, MA 02109
     617-338-2800
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     P R O C E E D I N G S
 2              (The following proceedings were held in open
 3    court before the Honorable William G. Young, United States
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    1 Courthouse Way, Boston, Massachusetts, on June 21, 2011.)
 7              THE CLERK:  Calling civil action 05-12424, Proveris
 8    Scientific Corporation v. Innovasystems, Inc.
 9              THE COURT:  Good morning.  Would counsel identify
10    themselves.
11              MR. POLK:  Good morning, your Honor.  Victor Polk for
12    the plaintiff.
13              MR. FRANCIS:  Good afternoon, your Honor.  Jeffrey
14    Francis for the defendant, Innovasystems.
15              THE COURT:  All right.  Well, good afternoon.  It's
16    good to see you.
17              I have my command from the Court of Appeals.
18    Mr. Polk, let's start with you, what do you think they're
19    telling me do?
20              MR. POLK:  I think they're telling you to finalize the
21    sanctions portion of this case and that we need to proceed to
22    the sanctions portion.
23              THE COURT:  And, I'm sorry, I didn't catch your name.
24              MR. FRANCIS:  Jeffrey Francis, your Honor.
25              THE COURT:  Mr. Francis, what do you think they're
```

(timestamps in left margin: 11:59 at line 10; 12:00 at line 20)

```
 1  telling me to do?
 2          MR. FRANCIS:  Your Honor, I agree with Mr. Polk, that
 3  is correct, but --
 4          THE COURT:  So what do I have to do?  What does that
 5  involve?
 6          MR. FRANCIS:  That's a good question, your Honor.
 7  Before we get to that --
 8          THE COURT:  That's why I ask it.
 9          MR. FRANCIS:  -- Innovasystems on March 18th filed a
10  petition for reexamination of this patent.
11          THE COURT:  And?
12          MR. FRANCIS:  And a decision is due on that
13  reexamination on July 18th.  If that reexamination is granted,
14  it will reject the claims --
15          THE COURT:  I understand what a reexamination is.
16  When you say "a decision is due," one hardly imagines it's a
17  final decision, but maybe I'm mistaken.  Will this be a final
18  decision?
19          MR. FRANCIS:  It will be a decision where the Patent
20  Office will either accept the reexamination and reject the
21  claims --
22          THE COURT:  And then what will happen?
23          MR. FRANCIS:  Then Proveris will have an opportunity
24  to try to revive those claims.  But then the burden would be on
25  Proveris to revive those claims.
```

```
 1              THE COURT:  In the Patent Office.
 2              MR. FRANCIS:  In the Patent Office, that's correct,
 3   your Honor.
 4              THE COURT:  Well, my experience has been -- the reason
 5   I interrupt you is that reexaminations are very slow, though
 6   this seems to be -- they're moving right along, and I respect
 7   that.
 8              I have another case right here before me where the
 9   claims have all been rejected, but my suit is going right on
10   because it isn't the final determination in the Patent Office
11   and we're getting ready for trial and all of that sort of
12   stuff.
13              So I understand what an examination is, I understand
14   how it works, and if you get me some sort of final action by
15   the Patent Office, then I will take cognizance of it, I'll take
16   judicial notice of it, won't be any problem.
17              What concerns me is you may be arguing for delay, and
18   delay -- I'm under a command of the Federal Circuit, and I feel
19   I must obey.
20              MR. FRANCIS:  Your Honor, I appreciate that, no one
21   wants undue delay, but we're going to have a decision by July
22   18th, which could at the very least give us a better sense of
23   where we stand at the Patent Office.  At that point, if the
24   Patent Office entirely rejects the reexamination issue, then
25   the entire issue is off the table, and it's only a month from
```

1  now.

2              THE COURT:  I'm not so sure it is.  I had -- we're

3  here because of an injunction.  Now, my injunction, I have

4  found -- and you have every right to appeal it -- I have found

5  my injunction was violated.

6              MR. FRANCIS:  Yes, your Honor.

7              THE COURT:  Now, if they now obviate the claims --

8  assume everything goes your way, the patent is invalidated, and

9  it's final action by the Patent Office.  Then if my injunction

12:03 10  did not so state, it should have, the injunction will terminate

11  by its own terms because the injunction should run until the

12  end of the patent.  If the Patent Office ends the patent, the

13  injunction should terminate.  So without any further matter,

14  the injunction will terminate.  But it was valid when issued,

15  and you've violated it, so I have found.  So we have to

16  consider sanctions.

17              What sanctions are you looking for, Mr. Polk?

18              MR. POLK:  Your Honor, it is in our motion for

19  sanctions papers, and I'm going to misstate them, I'm sure,

12:04 20  because I haven't gone back and looked at them, but first we're

21  looking for monetary sanctions.  We believe that they've

22  continued to sell product, indeed, we think they've continued

23  even after you found them to be in contempt, as you may have

24  seen in our motion to compel, an affidavit saying they have

25  continued to sell.  So we want the monetary damages either by

```
 1   way of their disgorgement of their profit or damages to us.
 2   Secondly, we want actual sanctions.  We think this is one of
 3   the more egregious cases --
 4            THE COURT:  What does that mean, "actual sanctions"?
 5            MR. POLK:  Well, as you know, the case law allows this
 6   Court in this circumstance to essentially award a punitive
 7   amount, and I say "punitive" in the sense that to effectuate
 8   this Court's obtaining compliance to its orders.  If all that
 9   the Court were to do is to grant --
10            THE COURT:  You're arguing it --
11            MR. POLK:  I'm sorry.
12            THE COURT:  I understand.  What if I set this down for
13   trial, because that's what it is, it's a jury-waived trial, on
14   my September running trial list.  That's fairly prompt.  I
15   think that accords with the mandate of the Federal Circuit, and
16   if you are right, Mr. Francis, they're weakened anyway, if
17   everything goes your way, and maybe settlement might be arrived
18   at.
19            What do you say, Mr. Polk, to that?
20            MR. POLK:  Your Honor, I think the mid-September date
21   is fine --
22            THE COURT:  Not mid-September --
23            MR. POLK:  I'm sorry --
24            THE COURT:  September trial list means Tuesday, the
25   day after Labor Day.  Doesn't mean you'll go then, I put a lot
```

```
 1   of things on in September, but that's the fastest, given what's
 2   planned for the summer, unless I'm going to try to crowd it in
 3   in July, which doesn't seem provident.  We'll put it in in
 4   September, get to you as soon as we can.  You're all right with
 5   that.
 6              MR. POLK:  I am all right with that.  Let me explain
 7   the only hesitation I've got.  We've got a motion to compel
 8   documents, and we want to take two depositions on the sanctions
 9   issue, which we have not taken.  In terms of -- if we had the
10   documents within a couple of weeks and then had another couple
11   of weeks to take the depositions, then we've got no problem
12   whatsoever.
13              The only other question, your Honor, is would you want
14   summary judgment briefing on this?  Because we believe that
15   there really is no question that your injunction has been
16   violated and that sanctions are warranted.
17              THE COURT:  Subject to what Mr. Francis tells me,
18   seems to me you ought to get your injunctions.  I think you
19   should be able to work out the documents.  Do I want summary
20   judgment?  I don't care, but if you're going to file it, you'll
21   have time over the summer to file it.  I will -- if I don't
22   kick you off the dime on the Tuesday after Labor Day, I'll
23   squeeze in a hearing, and we'll see if summary judgment
24   commends itself to me.  I don't really see summary judgment.
25   I'm not too troubled because I recall the case.  I recall these
```

```
 1    proceedings.  So on the issue of am I going to impose this or
 2    that sanction or will I not, I don't need much more help from
 3    you but argument.  But in terms of damages, I doubt that
 4    they're just going to concede the damages, and so then I need
 5    evidence as to that.
 6              Assume, for instance -- I suppose I don't need
 7    evidence as to a punitive sanction, but it would be difficult
 8    for me to get -- probably speaking too much, but I'm trying to
 9    be helpful -- absent actual damages, given your vigorous
12:08 10    defense of the patent, the prompt judicial action which gave
11    rise to this appeal, for starters -- tell your clients this --
12    some punitive fine doesn't, as we meet here today for a status
13    conference, doesn't commend itself to me.  Another possible
14    sanction is attorney's fees.  That would be more likely.  Tell
15    your clients that.  And I don't need discovery on that,
16    argument on that, given the history of the case.
17              If -- and don't for a moment think I'm deciding to
18    impose attorney's fees -- if I did, then they have to be
19    calculated.  I don't need a trial on that.  I would handle that
12:09 20    in the usual way.  You would make your petition, support --
21    you, Mr. Polk, plaintiff, supported by your detailed time
22    records.  The defense would pick at it, I would then impose
23    reasonable attorney's fees.  It would take me some time, but I
24    don't need a trial.
25              Now, as I talk, it sounds to me like the damages piece
```

```
 1  is the trial piece, and maybe, Mr. Polk, you can confirm that.
 2  What do you want to take depositions for?  What are you trying
 3  to discover?
 4          MR. POLK:  First of all, I don't have the documents on
 5  damages.
 6          THE COURT:  But what you mean is documents that
 7  evidence sales in violation of the injunction.
 8          MR. POLK:  Not only sales, your Honor, but cost
 9  information, the additional sales since the original summary
10  judgment, offers to sell out of New Jersey, because --
11          THE COURT:  I --
12          MR. POLK:  Okay, your Honor, let me start.
13          THE COURT:  You want damages.
14          MR. POLK:  That's not actually true.  Because one of
15  the things we think is going to turn your mind, we hope, on
16  punitive damages is the fact that they continued not only after
17  the original injunction, but thereafter, and that's something
18  we need discovery on, depositions on.
19          THE COURT:  You sound like you're arguing for
20  discovery.  I'm not -- I'm going to give you, I think,
21  discovery, a couple of depositions, and I said work out
22  documents.  You then think you can get summary judgment --
23          MR. POLK:  No, I think you're right, your Honor, in
24  thinking about it, I think you're right.  But I do want
25  discovery --
```

```
 1                THE COURT:  All right.  That's where you are.
 2                Now let's hear from Mr. Francis.  Shouldn't he get
 3   that discovery?  Shouldn't he get those documents and a couple
 4   of depositions?
 5                MR. FRANCIS:  Your Honor, I think the standard that
 6   Mr. Polk is requesting for sanctions is incorrect.
 7                THE COURT:  We'll hear that.  Shouldn't he get
 8   discovery?
 9                MR. FRANCIS:  Your Honor, if I may -- obviously
10   Mr. Polk is entitled to discovery, but what discovery is he
11   entitled to is the question.  I think if we were to first brief
12   and have you resolve on argument what damages are on the table
13   and then we could have discovery based on --
14                THE COURT:  Cart before the horse.  I mean, I suppose
15   you can brief it.  Do you oppose this discovery?
16                MR. FRANCIS:  I haven't been told what depositions he
17   wants, your Honor.  As to the documents, we believe we've
18   produced everything.  The only additional matters they pointed
19   to are activities outside the United States.
20                THE COURT:  So here's what we're going to do.  He'll
21   tell you -- what depositions do you want?  Who are they?
22                MR. POLK:  We want Mr. Waters; and the salesperson,
23   Mr. Karup, K-a-r-u-p.
24                THE COURT:  You're okay with that?
25                MR. FRANCIS:  Your Honor, obviously I have to find
```

1  out who Mr. Karup is.  This is the first time I've heard his

2  name.  If he is the European sales manager, then he has no

3  relevance to these proceedings.

4       THE COURT:  You've got a week to file a brief opposing

5  their request for discovery, and I'll act on it promptly.  Then

6  it will be an order.  Once there's an order, it will be an

7  order for discovery.  It's on the September running trial list.

8       What else should I do today?

9       MR. POLK:  Can I just say Mr. Karup is based in North

10  Carolina.  But this argument --

11       THE COURT:  You're arguing.  This is discovery.  I do

12  discovery on papers.  You can file whatever else you want, I'll

13  decide it on the papers.

14       MR. POLK:  One question about whether the Court would

15  consider this -- and I don't know if you've ever done it -- is

16  appointing an accountant to look at the records.

17       THE COURT:  An accountant after I've had the

18  sanctions, perhaps.  I've done it.  We'll see.  I expect if I

19  order -- one, I expect them to be forthcoming without an order.

20  He says everything's been produced, we'll see.  Once I enter an

21  order, I expect my orders to be enforced.  Of course I expected

22  my injunction to be enforced, and it wasn't.

23       Now, yes, that's a possible sanction.  If these people

24  don't obey -- but I'm not going there, Mr. Polk, and so I'm not

25  making a threat, but I've appointed receivers, put them out of

```
 1   business and I'll decide who runs their business.
 2   Conceptually, there would have to be a pretty strong
 3   evidentiary record for that.  And absent actual damages, I'm
 4   thinking attorney's fees, and onto the Court of Appeals.  And
 5   as a practical matter, Mr. Francis is right.  If this patent
 6   tanks, well, I'm going to take that into account.
 7            MR. POLK:  You haven't heard my response to his
 8   statement of timing.
 9            THE COURT:  I know.
10            MR. POLK:  Trust me on that, your Honor --
11            THE COURT:  I do.  My mind is open.  I'm simply trying
12   to schedule.  This is a scheduling conference.
13            MR. POLK:  I have one other issue, if I could raise
14   it, sir.
15            THE COURT:  Please.
16            MR. POLK:  And that is, I assume you know, the Federal
17   Circuit came out in the interim with the Echo Star v. TiVO
18   case. We believe that that in no way changes the Court's
19   analysis, because essentially what that case has done is say
20   you compare the two products.  You don't have to go through a
21   further analysis.  And we believe that that's exactly what we
22   did.
23            Given that there's going to be an appeal, we wonder if
24   it would be helpful --
25            THE COURT:  There is an appeal.
```

```
 1              MR. POLK:  What?
 2              THE COURT:  There is an appeal.  I guess they've sent
 3       it back now.
 4              MR. POLK:  I'm assuming that they will reappeal at the
 5       appropriate time.
 6              THE COURT:  I am, too.
 7              MR. POLK:  And my thought was that it may be helpful
 8       for the Court to take very quick briefing on whether TiVO has
 9       any impact on the Court's prior ruling.
12:15 10        THE COURT:  I depend on the adversary process.  You
11       file such papers for clarification or amendment or something
12       trying to bolster your position, I'm not insensitive to that.
13       I would give them a chance to respond.  I'll decide what I'll
14       do.
15              MR. POLK:  Proveris is happy with where we are, your
16       Honor.
17              THE COURT:  My -- and Mr. Francis, be serious now, I
18       expect your client to be completely forthcoming on discovery
19       here, given the record that I have found and ruled that my
12:16 20  injunction is violated.  So I can make other orders, and I will
21       be certainly clear that my orders are enforced.  Cooperation is
22       a good thing on both sides.  I would respect that.  I expect
23       that I'll be doing everything on the papers until a sanctions
24       hearing before the Court in September.
25              Should the case settle for any reason, and I hope it
```

```
 1   does, a simple phone call to Ms. Smith is all that's required.
 2           MR. FRANCIS:  Your Honor, I am just replacing prior
 3   counsel as lead counsel, but I assure you I will look at
 4   everything that has been produced and I will make sure that we
 5   are in full compliance.
 6           THE COURT:  Thank you.  Nothing I've said should in
 7   any way be thought of as pejorative for you or for predecessor
 8   counsel or your client.  The record is I found your client has
 9   disobeyed an injunction.  It doesn't make me angry, it simply
10   means I must take steps to see that my orders are complied
11   with, and discovery is part of it.  But that attitude that
12   you've just evidenced is very much appreciated by the Court.
13   See to it.
14           All right.  Thank you both.  We're recessed.
15           (Court adjourned at 12:17 p.m.)
16                  - - - - - - - - - - - -
17                         CERTIFICATION
18       I certify that the foregoing is a correct transcript
19   of the record of proceedings in the above-entitled matter to
20   the best of my skill and ability.
21
22
23
24   /s/Debra M. Joyce              July 18, 2011
     Debra M. Joyce, RMR, CRR      Date
25   Official Court Reporter
```
(12:17 at line 10)